DENNIS AUJERO, PLAINTIFF–RESPONDENT, v. JOHN CIRELLI, JR., D/B/A LUIGI'S RESTAURANT AND PIZZERIA, AND LEONARDO'S RESTAURANT, INC., D/B/A/ LUIGI'S RESTAURANT, DEFENDANTS AND THIRD–PARTY PLAINTIFFS–APPELLANTS, v. HOBART CORPORATION, THIRD–PARTY DEFENDANT.

Argued March 14, 1988—Decided June 23, 1988.

*Marc L. Dembling* argued the cause for appellants (*Berlin, Kaplan, Dembling & Burke,* attorneys).

*George J. Duffy* argued the cause for respondent (*Baker, Garber, Duffy & Pedersen,* attorneys; *John M. Walsh,* of counsel).

PER CURIAM.

In this action seeking recovery of damages for personal injuries the trial court dismissed the complaint, pursuant to *Rule* 4:23–5(a), for plaintiff's failure to answer defendants' interrogatories. Eleven months thereafter plaintiff brought a motion to vacate the order of dismissal. The trial court denied the application. In an unreported opinion the Appellate Division reversed, because "both excusable neglect by plaintiff's attorney and lack of prejudice to defendant[s] are manifest on the record." We granted certification, 108 *N.J.* 671 (1987), and now modify the judgment below by remanding to the trial court.

I

Plaintiff was seventeen years old when, on October 7, 1982, he sustained personal injuries in the course of his employment at defendants' restaurant and pizzeria. There appears to be no dispute that plaintiff's fingers were mangled in a dough-mixing machine. Through his attorneys, Baker, Garber, Duffy & Baker (Baker, Garber), he filed a complaint in four counts. Although the legal propositions recited in support of the allega-

tions of liability are not entirely clear, the complaint generally charges that plaintiff's injuries were a proximate result of (1) defendants' violation of "the Child Labor laws and statutes of the State of New Jersey," (2) defendants' breach of warranty and strict liability in respect of the defective nature of the dough-mixing machine, (3) defendants' negligence, and (4) the dough-mixing machine's "unsafe, dangerous and ultrahazardous" properties. In due course defendants answered and served plaintiff with interrogatories. Because those interrogatories remained unanswered well beyond the sixty-day time limit prescribed by *Rule* 4:17–4(b), defendants moved to dismiss the complaint pursuant to *Rule* 4:23–5. Baker, Garber did not respond to the motion to dismiss, which the court granted in May 1985.

In the meantime, apparently acting on the assumption that their motion to dismiss would be granted but that the case thereafter would be restored in keeping with *Rule* 4:23–5(a), defendants obtained leave to file a third-party complaint against Hobart Corporation (defendants' motion for leave to add a third-party defendant was filed and served before the complaint was dismissed), and continued to litigate a question of coverage between the liability and workers' compensation carriers. As a result of that litigation the attorneys representing defendants on this appeal were substituted in defense of the third count of the complaint, the negligence count. We note that as long as five months after the complaint had been dismissed the parties were still litigating the coverage issue and serving plaintiff's attorneys with the moving papers.

In August 1985 both the firm representing defendants on the third count and the attorneys for third-party defendant wrote to Baker, Garber requesting the answers to interrogatories—this despite the fact that the complaint had been dismissed some three months previously. The first communication was addressed to an associate in the Baker, Garber firm—not the associate responsible for this case—and the second was sent to that firm marked "Attention: George J. Duffy," the partner

who had signed the complaint on the firm's behalf. Neither letter reached its intended recipient, nor, as we shall see, could it have reached him given that firm's office procedures for routing the incoming mail. It appears from these communications that neither the defendants' attorneys nor the lawyers representing Hobart Corporation were pressing the obvious advantage they enjoyed by virtue of the order of dismissal, for their action was inconsistent with the case's status as "dismissed"; rather, their purpose seems to have been to alert someone in the Baker, Garber firm to the fact that the firm was sitting on a dismissed case, to the end that a motion to restore would be forthcoming.

That was not to be. Therefore, after one last communication to the court in September 1985, with a copy to all attorneys (but with the coverage litigation still stewing), the firm for defendants on the third count closed its file in January 1986, as did the attorneys for third-party defendant and the attorneys for defendants on the remaining counts of the complaint.

The interment of the litigation was but fleeting. By motion dated April 23, 1986, Baker, Garber sought to resurrect the case by a motion to vacate the May 1985 order of dismissal, to permit plaintiff to serve answers to interrogatories, and to restore the case to the trial calendar. An affidavit of George Duffy in support of the motion reads in part as follows:

The attorney assigned to the [plaintiff's] case at [the time it was dismissed] in this office was [X], Esq. Mr. [X] was a Senior Associate charged with the responsibility of the prosecution of the lawsuit. The Order dated May 24, 1985, was not entered in the diary of our office. On March 31, 1986, [X] left the employ of Baker, Garber, Duffy & Baker on having given two weeks notice previously. In reviewing his files after his departure, we discovered that no effort had been made to vacate the Order of May 24, 1985, nor had any action been taken by Mr. [X] to correct the situation. This was not withstanding the fact that considerable activity was taking place in the file.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Upon the departure of [X], Esq. from the office, a full review of his files was conducted, and I assigned this file to myself. Upon noticing the default and the Order of May 24, 1985, I took immediate steps to complete the answers to interrogatories and supply all information available to date. A copy of plain-

tiff's answers to interrogatories duly executed by Dennis Aujero is attached to these moving papers.

I can offer no extenuating circumstances to the Court why the Order dated May 24, 1985, was not vacated in accordance with the provisions of *Rule* 4:23–5. Plaintiff and Baker, Garber, Duffy & Baker now stand ready to fully comply with all discovery requirements of the defendants.

While the delay brought about by the failure to vacate the May 24, 1985, Order undoubtedly has inconvenienced the defendants, and impaired the control of the calendar by the Court, we respectfully suggest that plaintiff Dennis Aujero should not be penalized in the circumstances. It is also submitted that while the defendants may have been inconvenienced, the delay has not substantially prejudiced the defendants.

Defendants resisted the application to restore on the grounds that the delay in furnishing answers to interrogatories not only had prejudiced their ability to defend against plaintiff's main case but had inhibited their "course of discovery of witnesses and experts in the products liability third party case."

At the argument of plaintiff's motion to restore, Mr. Duffy, appearing for Baker, Garber, candidly acknowledged that he could "offer no excuse" for the time lapse, and that he had to "stand responsible for it." His argument focused on the court's discretion to enlarge the thirty-day period of *Rule* 4:23–5(a) for vacating an order of dismissal for failure to answer interrogatories. That Rule provides that

[o]n formal motion made by the delinquent party within 30 days after service upon him of the order [of dismissal], the court may vacate it, provided fully responsive answers to the propounded interrogatories are presented and the delinquent party pays costs in the amount of $50.00 to the Clerk of the Superior Court.

Specifically, plaintiff's counsel argued that the court's discretion should be exercised in favor of vacating the order of dismissal and restoring the case because "the primary person to be injured by our inaction would be the plaintiff." He further suggested that "as a practical matter" the case should be restored, restricted to the negligence count only, because he had already filed on May 9, 1986, but had not yet served, a second action against defendants that mirrored the first in its allegations of negligence; therefore a denial of plaintiff's motion to restore would simply produce a wasteful duplication of

effort: filing of an answer, third-party complaint and answer thereto, and a cranking up of the discovery process all over again. When pressed by the trial court on whether the amended complaint could withstand a statute-of-limitations attack, Mr. Duffy assured the court that there was no problem in this regard. In fact there was indeed a problem, although we are satisfied that Mr. Duffy was unaware of it. His representation to the court that a second suit would not run afoul of the statute of limitations was honest but mistaken.

Because the trial court could find "no valid reason for exercising [its] discretion to restore this case," it denied the application to vacate its earlier order of dismissal. Baker, Garber thereupon caused the summons and complaint in the new action to be served; defendants answered, setting up the defense, among others, of the bar of the statute of limitations, see *N.J.S.A.* 2A:14–2, and promptly moved for summary judgment; and the trial court, after argument on the motion, dismissed the complaint.

Plaintiff appealed both the denial of his motion to restore the first action and the summary judgment against him in the second action. The Appellate Division treated the appeals as one, and in a short unreported opinion reversed the trial court "order denying vacation of the dismissal of plaintiff's action for violation of the Child Labor Laws," citing *Zaccardi v. Becker*, 88 *N.J.* 245 (1982) (*Zaccardi* II), and *Rule* 4:50–1(a). The court below affirmed the dismissal of the second suit on statute-of-limitations grounds on the strength of *Tyson v. Groze*, 172 *N.J.Super.* 314 (App.Div.1980). *Tyson* stands for the proposition that *N.J.S.A.* 9:17B–1, which reduces the age of majority from twenty-one to eighteen years, operates to give one in the position of this plaintiff two years from the time he turned eighteen in April 1983 to commence suit on account of his October 1982 accident. *See N.J.S.A.* 2A:14–2. In fact, the amended complaint was filed more than three years after plaintiff's eighteenth birthday.

Plaintiff does not contest the statute-of-limitations ruling by a cross-petition for certification; hence our review is limited to the sole issue posed by defendant's petition, namely, the propriety of the Appellate Division's reversal of the trial court's refusal to restore the first case.

## II

The path we travel in this appeal, although by now well worn and marked by some established principles, remains far from straight. The results reached depend in large measure on which of several competing interests prevails. As Judge Baime observed in *Jansson v. Fairleigh Dickinson University*, 198 *N.J.Super.* 190, 194 (App.Div.1985), the decisions in this area "might seem to reflect a degree of judicial ambivalence," marked by the courts' approaching different factual situations "with varying degrees of firmness." *Ibid.*

Most frequently our cases focus on the tension between, on the one hand, the salutary principle that the sins of the advocate should not be visited on the blameless litigant, *e.g., Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336, 346 (1984), and, on the other, the courts' strong interest in securing finality in litigation and promoting judicial economy. The problem is aptly described in *Jansson:*

At one end of the spectrum, "there is the need to instill firmness and meaning to the provisions of our discovery rules, thereby maintaining a consistent and predictable sense of order * * *." *Crews v. Garmoney,* 141 *N.J.Super.* 93, 96 (App.Div.1976). At the other, "there is a general disinclination to invoke the ultimate sanction of dismissal where the statute of limitations has run." *Ibid.* The tension between these competing values becomes more acute when the parties are blameless and have relied upon the presumed competence and good faith of their attorneys. [198 *N.J.Super.* at 193–94.]

This case well illustrates the clash of the "competing values" described in *Jansson*. It also reflects some uncertainty about what Rule courts should rely on in their efforts to reach a decision. Recall that *Rule* 4:23–5(a), providing for dismissal of the complaint for failure to answer interrogatories, also sets forth what appear to be straightforward prerequisites for resto-

ration of a dismissed case: the motion must be made within thirty days of receipt of the order of dismissal and accompanied by fully responsive answers to interrogatories as well as payment of fifty dollars costs. The use of language indicating that when these prerequisites are met, the court "may" vacate the order of dismissal suggests that even when those conditions *are* satisfied, the court may nevertheless refuse to restore the case. The reported decisions, however, deal with cases in which the effort to restore comes *after* the expiration of the thirty days, and the question is whether the procedural rules should be complied with in the interests of predictability and the expeditious disposition of litigation, or should be relaxed in order to achieve essential fairness. See *Jansson v. Fairleigh Dickinson Univ., supra,* 198 *N.J.Super.* at 194, and cases cited therein. Some of the opinions resort to *Rule* 4:50–1(f), governing the circumstances under which a party may be relieved from the operation of an order, *id.* at 194–95 (citing *Manning Eng'g, Inc. v. Hudson County Park Comm'n,* 74 *N.J.* 113, 120 (1977); *Palko v. Palko,* 73 *N.J.* 395, 401 (1977); *Court Inv. Co. v. Perillo,* 48 *N.J.* 334, 341 (1966); *Hodgson v. Applegate,* 31 *N.J.* 29, 34–31 (1959); *Tenby Chase Apartments v. New Jersey Water Co.,* 169 *N.J.Super.* 55, 59–60 (App.Div.1979)). Other decisions rest on the general relaxation principle of *Rule* 1:1–2, which provides in part that "any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." *Jansson* collects those cases at 198 *N.J.Super.* at 195, and cites to *Zaccardi II, supra,* 88 *N.J.* at 253 n. 3; *Gnapinsky v. Goldyn,* 23 *N.J.* 243, 248 (1957); *Vines v. Orange Memorial Hosp.,* 192 *N.J.Super.* 496, 499 (App.Div.1984); *Schlosser v. Kragen,* 111 *N.J.Super.* 337, 346 (Law Div.1970).

In reversing the trial court's refusal to vacate its order dismissing plaintiff's action the Appellate Division based its ruling on counsel's "excusable neglect" as contemplated by the specific language of *Rule* 4:50–1(a). We need not decide whether the application of *Rule* 4:50–1(a) should be restricted to those

situations, unlike the one before us, in which relief is sought from a judgment *on the merits,* for we are satisfied that counsel's neglect was not "excusable"—a prerequisite to application of *Rule* 4:50–1(a).

The undisputed facts disclose that a senior associate in the Baker, Garber firm failed to answer the defendants' interrogatories in timely fashion or to seek an enlargement of the time within which to furnish the answers as provided for by *Rule* 4:17–4(b). There is no explanation whatsoever for that dereliction: illness, personal problems, the burdens of overwork, sloth, sheer incompetence—the record is silent. In his argument before the trial court Mr. Duffy disclosed that when the dismissal came to light, he invited the associate who had been in charge of the Aujero case "to submit an affidavit if he saw fit," but there was no response.

Viewed from the foregoing perspective, that is, with attention riveted on the firm's wayward associate charged with the handling of plaintiff's case, it might be said that the Baker, Garber firm itself was victimized. But this ignores the unfortunate fact that the operating procedures in the firm were programmed for trouble, for there was practically no way that a letter directed to anyone in the firm would get to the intended recipient unless that person happened to be the one handling the case to which the letter pertained. The mail was "case" routed, not "person" routed. Therefore, any mail concerning the Aujero matter would invariably be directed to the lawyer charged with responsibility for that file and to no one else—and this despite the fact, as indeed was the very situation here, that the letter itself was addressed directly to another associate or marked to the attention of a named partner. Mr. Duffy informed us at oral argument that the only way he would have received a letter concerning the Aujero file would have been if that letter had been marked to his attention with the additional legend "personal and confidential." Although no special insights into current techniques of efficient law-office management may be claimed by the members of this Court, no such

insights are required to permit us to conclude with confidence that something was terribly wrong with the way Baker, Garber's system short-circuited defendants' well-intentioned efforts to get somebody—*anybody*—to pay attention to the case. (We were told at argument that different procedures adopted by Baker, Garber since the Aujero debacle have rendered repetition of that sorry event almost impossible.)

Moreover, it is equally clear that the Appellate Division's reliance on *Zaccardi* II, *supra*, 88 *N.J.* 245, was misplaced. The issue in *Zaccardi* II was whether a dismissal for failure to answer interrogatories should bar a plaintiff from filing a new complaint *within the statute of limitations* (answer: ordinarily, no, *id.* at 253), and whether in the bizarre circumstances of that case defendants were entitled to assert the statute of limitations as an affirmative defense to bar plaintiffs' second complaint, filed after the first had been dismissed (held: no, on principles of equitable estoppel, *id.* at 257, 260). Because the *Zaccardi* defendants' own conduct had contributed to the delay in plaintiff's reinstitution of his suit after dismissal, that feature of the case served to distinguish it from *Rivera v. Prudential Property and Casualty Co.*, 104 *N.J.* 32 (1986), in which we upheld defendant's statute-of-limitations defense, raised after dismissal of plaintiffs' first complaint for failure to answer interrogatories. See *id.* at 37–39. Because *Zaccardi* II and *Rivera* are essentially statute-of-limitations holdings, they have no direct bearing on the issue before us.

■ The "neglect" involved here being plainly not excusable, thereby rendering inapplicable *Rule* 4:50–1(a), and *Zaccardi* II being of no aid to plaintiff, we turn finally to plaintiff's contention that the Court should invoke *Rule* 1:1–2, to the end that Dennis Aujero, the injured party, have his day in court. As indicated above, in pertinent part that Rule provides that "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." As likewise

observed above, the Rule governing restoration of a case previously dismissed for failure to answer interrogatories, *Rule* 4:23–5(a), provides that the court "may" vacate the prior order of dismissal if an appropriate motion is made within thirty days of that dismissal. *Rule* 1:1–2 can be looked to for relaxation of that thirty-day period, because it is not "otherwise stated" in any other Rule that relaxation is foreclosed. That feature serves to differentiate the thirty-day period of *Rule* 4:23–5(a) from those Rules containing time limitations the enlargement of which is absolutely prohibited. See *Rule* 1:3–4(c) for a list of those Rules containing time specifications that cannot be extended by either the parties or the court and hence are not subject to the relaxation provision of *Rule* 1:1–2. The Rule on which this appeal hinges, *Rule* 4:23–5(a), does not appear in the "prohibited" list. The relaxation of the thirty-day period for bringing a motion to restore is remitted, then, to the sound discretion of the court, as both parties to this appeal readily acknowledge.

What is to guide the exercise of that discretion? Returning to *Jansson v. Fairleigh Dickinson University, supra,* 198 *N.J.Super.* 190, we find a useful list of "several important factors that have generally been considered in determining whether the rules should be relaxed." *Id.* at 195. Included are "(1) the extent of the delay, (2) the underlying reason or cause, (3) the fault or blamelessness of the litigant, and (4) the prejudice that would accrue to the other party." *Ibid.*

Here, although the time between the order of dismissal and the bringing of the motion to restore amounted to eleven months, the reality of the litigation was such that, as recited above, this supposedly dismissed action had an extended afterlife. During that afterlife defendants continued to litigate the third-party matters and coverage issue, and they entered orders in the docket as late as five months after the order of dismissal. In one sense, then, the case was on "hold" and the real delay between restoration and inactivity was six months. Indeed,

viewing it from the time the defendants and third-party defendants closed their files, only three months elapsed until plaintiff's attorney's brought the motion to vacate the order of dismissal.

The factors of "underlying reason or cause" for the delay and "fault or blamelessness of the litigant" pose no real problem in this case. We have already determined that so far as this record addresses the conduct of the attorney responsible for the handling of plaintiff's case, it reveals no satisfactory reason for his lack of diligence. The law firm's contribution to the mishandling of the case had its roots in poor management rather than in any other form of lawyering; but the firm cannot escape the unexplained dereliction of its associate in charge of the case. As for Aujero himself, there is not the slightest suggestion that he played any part in producing his own predicament.

Finally, there is the question of the prejudice that would inure to defendants were this case to be restored. Defendants argue in general terms about the difficulty of obtaining witnesses, the dimming of recollections with time, and the absence of discovery. These are, of course, valid concerns, but they are nowhere tied in to the facts of this case. And although they were referred to in defense counsel's argument before the trial court, those concerns are nowhere adverted to in the court's ruling, which makes no reference to the potential for prejudice to defendants should the case be restored.

■ What does come through in the transcript of the trial court's ruling is the critical role in its decision of the belief—mistaken, as is now acknowledged—that the statute of limitations would not stand in the way of a second suit by plaintiff. The court emphasized that "especially where another complaint can be filed," it would not exercise its discretion to restore.

Given that circumstance we can have little confidence that the trial court would have exercised its discretion the same way had it not been misled (inadvertently, we repeat) about the

actual state of the law. We therefore remand the cause to the trial court to afford it the opportunity, after further argument by counsel, to reassess its discretionary ruling. The court should inquire closely of counsel on the subject of any prejudice that restoration of plaintiff's claim would work on defendants. If the evidence leads the trial court to make a finding that defendants' ability to defend on the merits would be impaired, the complaint should be dismissed. If the court exercises its discretion in favor of restoration, then it should consider the "range of sanctions * * * available to the trial court when a party violates a Court Rule," as well as its power "equitably [to] adjust the [Rule violations] controversy by less drastic sanctions [than dismissal with prejudice] when appropriate." *Zaccardi* II, *supra*, 88 *N.J.* at 252–53 & n. 3.

## III

Our coming to grips with the problem posed by this appeal has instilled in us a sense of disquietude about the working of *Rule* 4:23–5. Our study of the decisions that turn on the way the Rule has been applied persuades us of the accuracy of Judge Baime's observations in *Jansson*, quoted above (see *supra* at 573), that those decisions do indeed "reflect a degree of judicial ambivalence," and that "we have approached different factual situations with varying degrees of firmness." 198 *N.J.Super.* at 194. We sense a considerable measure of uncertainty in the lower courts about how the Rule should be treated, how firmly it should be applied, when it may safely be read indulgently, and under what circumstances it may be appropriate to relax the Rule and order instead some sanction in lieu of refusal to restore a dismissed case. We are obliged to admit to deep differences in this Court concerning the same matters. Our signals to the bench and bar may well have been mixed.

It occurs to us that the trouble may stem from the Rule's basic provision for striking of the delinquent party's pleading

on failure to respond to answers to interrogatories. The pertinent part of *Rule* 4:23–5(a) reads:

Dismissal or Suppression. If timely answers to interrogatories are not served and no formal motion for an extension has been made pursuant to *R.* 4:17–4(b), the complaint, counterclaim or answer of the delinquent party shall be dismissed or stricken by the court upon the filing by the party entitled to the answers of an affidavit stating such failure within 60 days from the date on which said answers became due. Thereafter such relief may be granted only by motion. The affidavit shall have annexed thereto a form of order of dismissal or suppression.

Read literally—and there is precious little room for interpretation—the Rule demands that the pleading be stricken on the filing of an affidavit attesting to the adverse party's failure to answer or on the filing of a motion: the pleading *"shall be dismissed or stricken* by the court * * *."* (Emphasis added.) Robbed of any opportunity to exercise discretion when confronted by the Rule's conditions for dismissal or striking of a pleading, but understandably reluctant to impose the ultimate sanction of ending an innocent litigant's opportunity to prosecute or defend his or her case, courts have transferred what in many instances is their admirable ingenuity to the other end of *Rule* 4:23–5(a)'s treatment of the failure-to-answer problem— the "resurrection" provision at issue in this appeal, which addresses the circumstances under which a dismissed case can be restored. This, as we have seen, results in a complete shift in focus, from the *fact* of the failure to provide answers to interrogatories to the *reasons* for that failure, the fault or no of the litigant, the prejudice that restoration might produce, the extent of the delay—none of which is mentioned in the Rule, but all of which can be made to fit nicely into a decision that turns on a reasonable exercise of discretion.

Perhaps inevitably, the result is indeed "judicial ambivalence" and "varying degrees of firmness" in application of the Rule. Judges, no less than lawyers, strain to avoid the ultimate sanction of dismissal of an affirmative claim or striking of a responsive pleading. There is little predictability of results. The purpose of the Rule, originally designed to expedite litiga-

tion, has been frustrated. None of this is good, and the time has come to address the problem directly.

Having concluded that the situation lends itself to a fresh look, we are referring to the Civil Practice Committee the question of what revisions to *Rule* 4:23–5 it would recommend to address the unhappy circumstances adverted to above, including both the relief to be granted to a party whose interrogatories remain unanswered and the means necessary to promote compliance with the Rules.

By way of recommendation the Court suggests that the Committee might want to consider some relief other than dismissal. It is clear to us now that the fifty-dollars provision of *Rule* 4:23–5 as a condition of vacating an order of dismissal is entirely inadequate to encourage compliance with the time restrictions on furnishing answers to interrogatories. If dismissal is to continue to be the ultimate sanction, then the Committee might think about reversing the current sequence of disposition so that a dismissal, rather than being a perfunctory act, would be seen for what it is, a termination of a party's day in court. With that consequence in mind, a court would want to assure itself through a personal appearance by a responsible member of the firm, or perhaps a client in the case of an obviously unresponsive attorney, that the discovery violation warrants denial of a day in court. Court time is taken now in evaluating the merits of restoration; that time might better first address the merits of dismissal.

Another alternative might be court-managed follow-up of a *pro forma* dismissal involving at least one personal contact with a partner or, if necessary, the client. The standards would remain the same, but the procedure would guarantee that we not have dismissals by neglect.

All of the foregoing recommendations we leave for now in the Committee's hands, the current Rule to remain in place, of course, until such time as the Court acts on any report that the Committee may file. We add only the reminder that while

sometimes maligned, calendar control is an important goal of the judicial system. Without it the *quality* of justice suffers, cases take years to be reached, and citizens wait years for justice. Those considerations, however, must be weighed against the demands of each case, for "justice is the polestar [of our system] and our procedures must ever be moulded and applied with that in mind." *New Jersey Highway Auth. v. Renner,* 18 *N.J.* 485, 495 (1955).

## IV

The judgment of the Appellate Division is modified and the cause is remanded to the Law Division for further proceedings consistent with this opinion.

*For modification and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, and STEIN—6.

*For reversal*—None.