260 N.J. Super. 368 (1992)
616 A.2d 957
MARK C. ZIMMERMAN, PLAINTIFF-APPELLANT,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION AND JOHN DOES 1 THROUGH 5, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1992.
Decided December 2, 1992.
*370 Before Judges PRESSLER and R.S. COHEN.
Allen S. Zeller argued the cause for appellant (Freeman, Zeller and Bryant, attorneys; Allen S. Zeller and Amy B. Goldman, on the brief).
William J. Pollinger argued the cause for respondent United Services Automobile Association (Pollinger and Fearns, attorneys; William J. Pollinger, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Mark C. Zimmerman appeals from an order denying his motion to vacate the order dismissing his complaint with prejudice. The dismissal was ordered because of the failure to *371 have timely served defendant with fully responsive interrogatories. We reverse.
In August 1988, plaintiff sustained severe back injuries in an automobile accident. He required two laminectomies and incurred medical expenses in excess of $40,000. He was then an insured of defendant United Services Automobile Association, which had issued an automobile liability policy to him providing coverage of $100,000/$300,000. That policy also had an underinsured motorist provision (UIM), affording, however, UIM coverage of only $15,000/$30,000. The tortfeasor allegedly responsible for the accident was covered by a minimum $15,000/$30,000 policy, thus precluding plaintiff's recourse to his own UIM coverage. He brought this action for reformation of the policy claiming that defendant had breached its statutory duty by not offering him optional UIM coverage in addition to the mandated minimum.
The complaint was filed in late November 1989. It alleged, in critical part, that plaintiff, having no expertise in insurance matters, relied on the advice of defendant's agents in choosing his coverages. Based on that reliance and the "professional information and choices he had received from defendant," plaintiff alleged that he opted to purchase $100,000 in basic liability coverage and, had he known of the additional UIM option, would have elected that coverage in the amount of $100,000 as well. By its answer, filed five months later, defendant admitted its "duty to comply with applicable law relating to notification to plaintiff of available additional underinsured motorist coverage." It alleged, however, without specificity, that "it complied with the applicable law."
In June 1990, some fourteen months after the filing and service of its answer, defendant served plaintiff with a set of interrogatories containing 62 questions and 88 subparts. The questions addressed both plaintiff's medical condition and his reformation cause of action, making a number of duplicative inquiries respecting his requests over the years for policy *372 changes and respecting, as well, the circumstances of the issuance to him of the subject policy with its minimum UIM coverage.
Plaintiff did not answer the interrogatories. Defendant's substituted counsel wrote to plaintiff's attorney requesting answers, and there were apparently also some telephone calls between the lawyers' offices, none of which succeeded in evoking answers. Consequently, in June 1991 defendant moved for dismissal of plaintiff's action for failure to answer interrogatories. It does not appear that plaintiff responded to this motion at all, and on July 26, 1991, a dismissal order was entered. The order did not specify whether the dismissal was with or without prejudice.
Following entry and service of the order, plaintiff's attorney finally prepared answers which plaintiff certified and were apparently served on defendant on October 25, 1991, simultaneously with plaintiff's motion for reinstatement of the complaint. That motion was supported by counsel's certification stating that "fully responsive answers" had now been served and that the $300 payment to the clerk required by R. 4:23-5(a)(1) had been paid. Defendant responded by filing a cross motion for dismissal of the complaint with prejudice. The basis of the motion was the assertion that the answers were not adequately responsive, thus depriving defendant of its "right to know what plaintiff's claim is...." Both parties having waived argument, these motions were considered on the papers. An order was entered on November 8, 1991, dismissing the complaint with prejudice. The record indicates neither a response from plaintiff to the cross motion nor any indication of reasons by the judge for his grant of the cross motion.
Plaintiff promptly made another motion, again seeking reinstatement of the complaint and, in the alternative, reconsideration of the dismissal with prejudice. Counsel asserted in support of this motion that the original answers had been adequate to apprise defendant of the claim and beyond that, that supplementary *373 answers had been served on defendant on December 3, 1991. This motion was orally argued. Without a substantive consideration of the interrogatories themselves, the answers and the supplementary answers, the court concluded in general terms that the answers did not appear to be adequately responsive, and denied plaintiff's request for relief. Plaintiff appeals.
We reverse for two reasons. First, the procedure attending the entry of the order dismissing with prejudice failed, in significant respects, to comply with the requirements of R. 4:23-5, as amended effective September 4, 1990, and we are satisfied that these noncompliances substantially prejudiced the rights of plaintiff which were attempted to be vouchsafed by the rule amendment. Beyond that, we are also satisfied that when the basis of the dismissal with prejudice motion is the assertion that some questions have been inadequately answered rather than that no answers at all have been forthcoming, the court should ordinarily, unless plaintiff's bad faith is demonstrable from the overall nature of the answers, treat the dismissal motion as a motion for more specific answers and either deny the dismissal motion or, at the most, reserve disposition pending plaintiff's opportunity to supply any ordered supplementation.
We recognize that the proceedings here took place not long after the 1990 amendment of R. 4:23-5, prior to any consideration thereof by an appellate court, and just after issuance of the Law Division's thoughtful opinion in Suarez v. Sumitomo Chemical Co., 256 N.J. Super. 683, 607 A.2d 1057 (Law Div. 1991), which does not appear to have come to the attention of the parties or the court. Unfamiliarity with the amended rule may well account for the result reached here. We are, however, persuaded that both the philosophy and text of the amendment interdict the result reached here.
The need for radical change in our approach to the problem of unanswered interrogatories was underscored by the Supreme Court in Aujero v. Cirelli, 110 N.J. 566, 542 A.2d 465 *374 (1988), in which it recognized that the practice then prescribed by R. 4:23-5 had failed to achieve its purpose of expediting litigation and at the same time was generating
.... a considerable measure of uncertainty in the lower courts about how the [dismissal provision of the] Rule should be treated, how firmly it should be applied, when it may safely be read indulgently, and under what circumstances it may be appropriate to relax the Rule and order instead some sanction in lieu of refusal to restore a dismissed case. We are obliged to admit to deep differences in this Court concerning the same matters. Our signals to the bench and bar may well have been mixed. [Id. at 579, 542 A.2d 465]
Accordingly, in Aujero, the Court requested the Civil Practice Committee to consider and recommend revision of R. 4:23-5 "to address the unhappy circumstances adverted to above, including both the relief to be granted to a party whose interrogatories remain unanswered and the means necessary to promote compliance with the Rules." Id. at 581, 542 A.2d 465. The 1990 amendment of R. 4:23-5 constitutes the Committee's response to this charge.
As made clear by the Committee's report, see 125 N.J.L.J. Index Page 421 (1990), the 1990 rule represents a significant departure from prior methodology and philosophy. It is designed to elicit answers rather than to punish the offender by the loss of his cause of action or defense. Scrapping the former practice of an ex parte motion for dismissal by the offended party followed by a motion for relief made by the offending party, the 1990 rule prescribes a two-step procedure intended to give the offended party an effective mechanism for obtaining answers to interrogatories and the offending party an effective mechanism for preserving his action or defense.
The plan of the rule is to limit the offended party's initial relief, when answers to interrogatories are not timely forthcoming, to a dismissal or suppression without prejudice. R. 4:23-5(a)(1). He must, moreover, seek that relief by motion on notice. If the order of dismissal without prejudice ensues, as is required absent good cause, the offending party is then accorded, in effect, 90 days in which to comply with his obligation to serve "fully responsive" answers and thus to obtain the relief *375 of reinstatement of the dismissed or stricken pleading. The costs which the offending party must pay on his motion for vacation of the dismissal order depends on the time which elapses between the date of the entry of the order and the filing of the vacation motion, namely, $100 if the vacation motion is made within 30 days and $300 if made thereafter. Ordinarily a properly supported motion for vacation should be routinely granted, with or without other appropriate sanctions as the trial court, in its discretion, would determine.
Dismissal with prejudice is prescribed by paragraph (a)(2) of the rule and requires the offended party to make a second motion if answers are not forthcoming within 90 days after entry of the without prejudice order. Because that motion is required to be granted absent "exceptional circumstances," the rule requires the attorney for the offending party to file and serve an affidavit five days prior to the return date stating that the client has been notified of the pendency of the motion or that the attorney cannot determine the client's whereabouts after diligent inquiry. By incorporating the form prescribed by Appendix II-F, the rule further requires the client to be advised that he has a right to appear and be heard on the return date. Appearance by the attorney on the return date is also made mandatory. The point of client notification, which is at the heart of the dismissal with prejudice practice, is explained by the Civil Practice Committee as follows:
The Committee is of the view that the main objective is to compel the answers rather than to dismiss the case, and believes that this two-tier, 90-day practice will have a salutary effect because of a key stipulation of the proposal, namely, that an attorney who is served with a notice of motion to dismiss with prejudice must send a letter to the client so advising ... The Committee is of the view that responsible practitioners will seek to avoid the necessity of having to send such a letter by seeing to it that answers are forthcoming within the 90-day period. Another advantage of this practice is that it protects the attorney who is unable to locate a client and has no other recourse but to allow to terminate litigation in which the client itself may have lost interest. Thus, the alternative to sending the letter to the client and so certifying to the court is a certification by the lawyer that he or she cannot locate the client after diligent inquiry. [Ibid.]
*376 We also emphasize that R. 4:23-5(a)(3) reiterates the general requirement of R. 1:6-2(c) that all motions made pursuant to paragraphs (a) and (b) are required to include a certification of prior consultation with opposing counsel.
As we understand the rule, then, there are at least three prerequisites to the entry of an order of dismissal with prejudice which were not met here. First, although defense counsel complained in his supporting certification on his cross motion that a number of interrogatories had not been adequately answered, he did not certify, as required by R. 4:23-5(a)(3), that he had consulted with counsel in an effort to obtain acceptable answers prior to making the cross motion. Second, there is nothing to indicate notice to the plaintiff by his attorney of defendant's with-prejudice cross motion. Finally, it is clear that if the client is afforded an opportunity to appear and if the attorney is mandated to appear, the motion is not subject to waiver of oral argument and consequent decision on the papers. See, so holding, Suarez, supra, 256 N.J. Super. at 687-688, 607 A.2d 1057.
The irony here is the judge's suggestion during colloquy on the third motion that had plaintiff's attorney actually appeared on the second motion and argued the adequacy of the interrogatory answers which he had by then served, the outcome of the with-prejudice cross motion might have been different. The point of course is that the dismissal with prejudice should not have been ordered at all in view of the unresolved dispute, raised by the motion papers then before the court, as to whether or not plaintiff had indeed cured the default within the 90-day period. Nor should the dismissal with prejudice have been entered on the papers and without notification to plaintiff himself.
In sum, we are satisfied that achievement of the salutary scheme of the revised rule requires meticulous attention to its critical prescriptions, and particularly to those provisions which are intended to afford a measure of protection to the party who *377 is faced with the ultimate litigation disaster of termination of his cause. Those provisions were not complied with here, and hence the order of dismissal with prejudice was improvidently granted.
The problem before us is, of course, exacerbated by the unresponsive-answer problem. We recognize that in order to cure the default, R. 4:23-5(a)(1) requires the defaulting party to serve "fully responsive answers." We also appreciate that what the answering party in good faith may regard as responsive under the circumstances is not necessarily congruent with the propounder's view of the matter. There is a broad area for bona fide dispute between answers which are patently inadequate and a set of answers which fully meets the propounder's expectations. We are also satisfied that this much at least is clear. If the set of answers, considered in the context of the specific cause of action and the progress of discovery to date would have been sufficient to withstand a motion for dismissal without prejudice under R. 4:23-5(a)(1), then it is also sufficient to withstand a motion for dismissal with prejudice under R. 4:23-5(a)(2). And if the real contour of the dispute is defendant's request for more specific answers, then the judicial obligation is to adjudicate that dispute, not to dismiss the action with prejudice.
What we are dealing with is, in the end, a question of appropriate remedy. If the set of answers as a whole lies within the area of bona fide dispute as to adequacy, both parties have adequate recourse for testing both the propriety of specific questions and the adequacy of specific answers. The opposing party may move to strike specific questions. R. 4:17-5. The propounder may move for an order requiring more specific answers. R. 4:23-1. In this regard we point out that in explaining R. 4:23-5(a)(1), the Civil Practice Committee noted that ordinarily an order compelling answers would be an inappropriate and unintended judicial response to the motion for dismissal. See Report, supra. But an order compelling answers *378 is a very different matter from an order for more specific answers, and we are persuaded that when the real discovery dispute is not a failure to answer but rather an alleged failure to answer in a "fully responsive" manner, it is the dismissal with prejudice which is inappropriate unless the answering party has been ordered to answer more fully and fails to do so. Beyond that, it is clear that if the answering party has provided sufficient information at least to withstand summary judgment, he may be bound in his trial presentation by his inadequate answers. Thus his inadequate answers constitute his risk, not his opponent's, since the trial proofs may be limited by the content of the interrogatory answers. Skibinski v. Smith, 206 N.J. Super. 349, 353, 502 A.2d 1154 (App.Div. 1985).
We have reviewed the questions, answers and supplementary answers here, and we are satisfied that they fall within the area of bona fide dispute, thus precluding the ordered dismissal with prejudice. The cause of action, alleged with substantial specificity in the complaint, is a simple one, arising under N.J.S.A. 17:28-1.1. In sum, that statute required, at the time the policy in question here was issued, that an automobile liability insurer provide UIM coverage in the minimum amount of $15,000/$30,000 and that it also offer the insured the option of purchasing additional UIM coverage up to $250,000/$500,000. See, generally, Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988). We further explained, in Wasserman v. Wharton, Lyon & Lyon, 223 N.J. Super. 394, 538 A.2d 1270 (App.Div. 1988), the precise nature of the obligation of the insurer to make that option realistically available to its insureds. Defendant's answer here does not dispute the fact that plaintiff's UIM coverage was at minimum levels. It admits, moreover, its statutory obligation to have offered him the option of purchasing additional coverage. There is thus no essential legal dispute and there is only one point of critical factual dispute. Defendant alleges that it did comply with this obligation and plaintiff alleges that he was never advised by defendant or its agents of the option. His answer to the *379 interrogatory requesting the factual basis of that allegation is as follows:
The availability of the undersigned [sic] motorist coverage beyond the statutory minimum was not verbally communicated to me by USAA. Additionally no conspicuous written communication was provided to me in accordance with the statutory requirements of the Laws of the State of New Jersey. Plaintiff reserves the right to amend this answer to interrogatory upon completion of further discovery.
This was not a non-answer.[1]
In claiming that the answers to interrogatories were sufficiently unresponsive to warrant dismissal with prejudice, defendant relies on this answer, the incorporation by reference of this answer in response to other cognate questions and plaintiff's asserted unresponsiveness to a group of questions asking him to explain the basis of his allegation that defendant had a duty to inform him of the UIM option  matters which defendant had already admitted in its answer to the complaint. Since the circumstances surrounding the issuance of the policy in question were certainly as much within defendant's knowledge as plaintiff's, if not more so, we think it clear that any deficiency in plaintiff's answer, while subjecting him to proof risks, hardly warranted the loss of his opportunity to proceed on the ground of a fatal discovery default.
We recognize that neither the prosecution nor defense of this action was pursued with the diligence required either by the rules of practice or with the aim of expediting a final disposition of the controversy. Both were at best conducted in a desultory manner. We are also of the view that plaintiff's attorney's lack of diligence was particularly egregious.[2] We *380 suspect that the scenario here was not exceptional but was, rather, a regrettably common symptom of a general systemic malaise attributable, at least in part, to trial calendars which have little credibility, to judicial over-indulgence motivated by the need to salvage the client's apparently meritorious claim, to an apparent overall decline in professionalism, to an apparently increasing disinclination of opposing counsel to make their own accommodations with each other, and to the general host of problems inevitably spawned by overcrowded calendars and the consequent impairment of the court's responsive mechanisms. These are all problems in urgent need of redress. They will not be redressed, however, by applying the wrong remedy to a presented problem, particularly when that remedy is dismissal with prejudice.
We remand to the trial court for entry of an order reinstating the complaint and fixing a short period for the completion of all discovery.
NOTES
[1] In view of the allegations and admissions of the pleadings which delineated a narrow factual dispute on which plaintiff's right to recovery rested, it appears that the taking of plaintiff's deposition would have been the most effective and productive discovery mode, permitting thorough inquiry, if defendant so desired, of the details of plaintiff's factual allegations.
[2] We were advised by plaintiff's attorney at oral argument that the associate to whom this matter had been entrusted is no longer with the firm.