The opinion of the court was delivered by
PAUL G. LEVY, J.A.D.
This appeal by appellant Eugene E. Mori (“Mori”) concerns the assessment for tax years 1991, 1992, and 1993 of vacant land in respondent Town of Secaucus (“Secaucus”). The Secaucus portion of appellant’s property consists of 135.93 acres, of which 51.11 acres are upland and developable; the remaining 84.82 acres are wetlands. In reinstating the original assessment for tax year 1991, and increasing significantly the assessments for tax years 1992 and 1993, the Tax Court rejected Mori’s expert’s valuation analysis and relied on Secaucus’s expert’s use of the sales compar *98 ison approach. Mori v. Town of Secaucus, 15 N.J.Tax 607 (Tax 1996).
On appeal, appellant maintains: (1) that the judge erred in determining that the presumption of correctness of the 1991 and 1993 County Board judgments and the 1992 original assessment had been overcome; (2) that the judge improperly determined value for 1991, 1992, and 1993 by relying on “comparables” too dissimilar from Mori’s property; (3) that there was no credible evidence addressing the magnitude of traffic and sewer expenses necessary to support the development on which the appraisal value was based; and (4) that the judge erred in permitting Hugh McGuire to testify in rebuttal for Secaucus and by relying on his testimony.
While the testimony from each expert is subjective, the special expertise of the Tax Court enables its judges to evaluate the evidence and adjudicate the issues presented. We, in turn, will not disturb their findings unless they are plainly arbitrary or lack substantial support in the record. See Pine Street Management Corp. v. City of East Orange, 15 N.J.Tax 681, 686 (App.Div.1995) (quoting G. & S. Co. v. Borough of Eatontown, 6 N.J.Tax, 218, 220 (App.Div.1982)), certif. denied, 144 N.J. 172, 675 A.2d 1121 (1996). Mori’s last contention causes us concern, not in light of that standard of review but as a matter of due process and fairness.
Hugh McGuire testified as a rebuttal witness for Secaucus, reviewing the appraisal experts’ opinions. Addressing Secaucus’s proposed use, he relied on cost data from a well recognized source, the Marshall & Swift Valuation Service, and calculated total project costs, including land acquisition costs, of $311,816,970 for 3,055,500 square feet of office buildings and 1,379,000 square feet for a parking garage. He then determined gross income for the office buildings at $59,582,250 ($19.50 per square foot), a 10% vacancy and loss allowance, expenses, including taxes, of $19,096,-875, with a resulting net income of $34,527,150. He assumed the developer would obtain a 9% mortgage loan from either an insurance company or pension fund for 70% of the total acquisition cost, amortizable over 25 years, with an equity contribution of the *99 remaining 30%. The equity contribution was $93,545,091, and the cash-on-cash return was $12,305,709, or 13%. He also stated that building on this property was not a short-term project, and it would take fifteen to twenty years to build three million square feet of office space.
Mori asserts that McGuire’s testimony about financial feasibility was presented on the last day of trial with no advance notice as required by R. 8:6-1, utilizing a one-page summary that was entered into evidence over Mori’s objection. Mori complains that on direct examination, McGuire gave no detailed explanation of how he calculated the total project cost of $311,816,970. Particularly, Mori contends that McGuire did not explain how he assumed the buildings would cost approximately eighty dollars per square foot to construct, except for a vague reference to the Marshall & Swift. Mori adds that McGuire was vague in explaining the cost for building a parking garage, and compounded these deficiencies by adding $12,220,000 for off-site costs which he believed had been previously testified to by “Mr. Mori’s engineer.” However, Mori asserts there was no such testimony.[1]
Mori maintains that following McGuire’s testimony, he addressed the Marshall & Swift data that McGuire claimed to have used and submitted copies of the relevant pages supporting his criticism. The Tax Court determined that because the Marshall & Swift information was not submitted at trial, counsel’s proffering of the information in a post-trial brief was inappropriate. Mori v. Town of Secaucus, supra, 15 N.J.Tax at 624-25. For the first time, on appeal, Mori asserts that both the Tax Court and this court should take judicial notice of this additional data pursuant to N.J.R.E. 201(b)(3) and N.J.R.E. 202(b). Secaucus responds that both courts may take judicial notice of valuation service data, but the trial judge properly exercised his discretion not doing so and this court should also decline.
*100 McGuire’s testimony about the financial feasibility of the project was a significant part of the Tax Court’s decision. Mori v. Town of Secaucus, supra, 15 N.J.Tax at 622-23. The judgment observed, that:
[UJnlike valuation conclusions, which depend in large measure upon hard data for their support, the financially feasible and maximally productive aspects of the highest and best use analysis do not, by their very nature, lend themselves to the precise quantification required from valuation proofs. The primary standard, after all, is identification of the reasonably probable use, Appraisal Institute, The Appraisal of Real Estate, supra, at 275; that use, to be sure, must not be remote, speculative, or conjectural. Six Cherry Hill, Inc. v. Cherry Hill Tp., 7 N.J.Tax 120 (Tax 1984), aff'd o.b. per curiam 8 N.J.Tax 334 (App.Div.1986). Mr. McGuire’s testimony went beyond the remote, speculative, or conjectural. He supported his acquisition cost projections by reference to a recognized cost service used by most valuation experts, and for his land value, he incorporated the valuation estimate of the municipality’s valuation expert.
There is a multitude of information in Marshall & Swift, and even if it had been admitted, testimony explaining why McGuire’s choices should be rejected would have been necessary. Mori’s submission allegedly supported a conclusion that the project envisioned by Secaucus would not be financially feasible because it would yield a negative return of $8,853,855 instead of the positive return of $12,305,709 opined by McGuire. Moreover, it is clear that Mori was not prepared to deal with McGuire’s testimony on such short notice. The best he could do was to submit data from Marshall & Swift as sur-rebuttal in a post-trial brief. Since McGuire had relied on Marshall & Swift, Mori should have been granted a short adjournment of the trial in order to consult with his experts and prepare to cross-examine McGuire on these materials. At the very least, the court should have accepted the post-trial submission and evaluated each of Mori’s claims, although such a submission would have been inferior to informed cross-examination and possible sur-rebuttal witnesses.
When a surprise witness is called, the court may, in some circumstances, refuse to hear that witness. Ratner v. Gen. Motors Corp., 241 N.J.Super. 197, 202, 574 A.2d 541 (App.Div.1990). However, once it is determined that the witness is truly a surprise witness, or is a known witness presenting surprise evidence, some steps must be taken to alleviate the resulting prejudice to the *101 surprised party. Thus, an adjournment of trial to prepare a rebuttal by studying the evidence or by deposing the expert may be appropriate. Id. at 203, 574 A.2d 541. See also Balian v. Gen. Motors, 121 N.J.Super. 118, 131, 296 A.2d 317 (App.Div.1972) (“[Ejffective rebuttal can only be had if opposing counsel and his expert are given an adequate opportunity to meet such evidence. We do not consider that cross-examination alone would ordinarily provide a sufficient avenue of rebuttal to the adverse party.”), certif. denied, 62 N.J. 195, 299 A.2d 729 (1973); Weiss v. Goldfarb, 295 N.J.Super. 212, 225-26, 684 A.2d 994 (App.Div.1996) (finding an abuse of discretion when the trial court “unfairly prevents a [party] from attempting to rebut a material predicate of the [adversary’s] theory testified to on the [adversary’s] case”), certif. granted, 150 N.J. 26, 695 A.2d 669 (1997). The Tax Court erred when it failed to heed these precedents.
Accordingly, we remand to the Tax Court so the record can be re-opened and Mori be permitted to challenge McGuire’s testimony. The court may utilize whatever procedural steps are deemed appropriate, reconsider the entire matter and issue a final determination. We do not retain jurisdiction.
Reversed and remanded.

 Secaucus asserts this is a deduction for each tax year based on development of 3,055,500 square feet, approved by the Tax Court as a $4 per square foot deduction for each tax year for extraordinary off-site expenses related to traffic and sewers.