798 A.2d 100

UNIVERSAL FOLDING BOX CO., INC., PLAINTIFF–
RESPONDENT, v. HOBOKEN CITY,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 19, 2002—Decided May 24, 2002.

228

Before Judges WEFING, CIANCIA and PARRILLO.

*Paul Tannenbaum* argued the cause for appellant *City of Hoboken* (*Zipp & Tannenbaum*, attorneys; *Mr. Tannenbaum*, of counsel; *Mr. Tannenbaum and Joseph P. Horan, II*, on the brief).

*Steven R. Irwin* argued the cause for respondent (*Mandelbaum & Mandelbaum*, attorneys; *Mr. Irwin*, on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

Defendant City of Hoboken (Hoboken) appeals from five judgments entered in the Tax Court on September 15, 2000 setting the

assessed value for property owned by Universal Folding Box Co., Inc. (Universal) for the tax years 1994 through 1998.[1] The result of the judgments in question is to entitle Universal to a refund of more than $450,000. We have reviewed the record and are satisfied the judgments should be affirmed.

The property is located at Lot 1 of Block 106 in Hoboken and is known as 1200–1318 Madison Avenue. The area is zoned industrial and the property is used for manufacturing and warehousing. The neighboring properties are used in a similar vein. Plaintiff's appraiser, Maurice Stack, testified that was the highest and best use of the property, and that, in his opinion, the value of the property was $2,600,000. Hoboken, however, had assessed the property at values ranging from $5,801,000 in 1994 to $4,720,000 in 1998. That dispute in valuation led to this litigation.

Universal filed complaints with the Tax Court annually, commencing in 1994. However, the ensuing litigation did not proceed swiftly. Various trial dates were assigned and then adjourned. Indeed, by the time the matter proceeded to trial in June 2000, at least twelve different trial dates had been set, many as peremptory, and then adjourned. Also, various case management orders had been entered setting final dates for submission of expert reports and then ignored.

Plaintiff's appraiser prepared two reports, the first of which was served on Hoboken in February 1997 in anticipation of a scheduled May 1997 trial date, and a second, supplementary report in October 1998. However, despite the various deadlines set by the Tax Court for submission of an expert report, Hoboken never submitted one.

---

[1] The Tax Court entered five separate judgments, one for each of the respective tax years. Hoboken filed only one Notice of Appeal, purportedly encompassing these five judgments. The proper procedure would call for five separate Notices of Appeal, followed by a motion to consolidate. We elect to deal with the merits, rather than dismiss for this procedural deficiency.

In June 1999, when a number of these court-ordered deadlines had come and gone and Universal had not received a report from the City's expert, it prepared and served a set of interrogatories on Hoboken. Hoboken made no objection to this apparently late service of discovery, but neither did it provide any response to the interrogatories, which were hardly burdensome, totaling only eight questions in all.

On December 23, 1999, facing a January 10, 2000 trial date and having received neither an expert's report nor any response to the interrogatories served nearly six months earlier, Universal filed a motion captioned as one "to preclude defendant from producing any expert testimony or witnesses at the time of trial." On January 10, 2000, the Tax Court judge did not deal with the substance of Universal's motion. Rather, he met with counsel in chambers, adjourned the trial date until May 22, 2000, and set a date of April 22, 2000 for the final exchange of experts' reports.

Hoboken did not submit an expert's report by April 22, 2000 and did not have a report by May 22. The matter did not proceed to trial on that date either; rather, the Tax Court judge heard argument on Universal's motion, which it had filed more than five months earlier. Although Hoboken had filed no opposition to the motion in the five months that it had been pending, the Tax Court judge permitted its attorney to argue in opposition. By the time of this argument, nearly a year had passed since Universal had served its interrogatories and Hoboken had provided no response to them at all.

It is clear from the transcript of the argument on May 22 that any delay in serving a report or answering interrogatories lay not at the feet of Hoboken's attorney, but rather with the individual the City had retained as its expert who was serving in that capacity in more than five hundred pending matters for Hoboken. It is also clear from that transcript that the Tax Court judge was familiar with the fact that this individual had in the past taken the stand after a taxpayer's expert had testified, but without having served a report in advance, to challenge the bases of the opinion

offered by the taxpayer's expert, asserting that his rebuttal testimony was factual in nature, not expert opinion. Hoboken's expert had utilized this technique in *Mori v. Town of Secaucus*, 17 *N.J. Tax* 96 (App.Div.1997), *certif. denied*, 154 *N.J.* 608, 713 *A.*2d 499 (1998), necessitating a remand to permit the taxpayer the opportunity to confront information not supplied in advance of trial. Finally, it also clear from that transcript that the difference in valuation was due in large measure to the position of the City's expert that the property should be valued as if it could be converted to residential use to capitalize on the success of such conversions in other sections of the city. It was that difference that had prevented the parties from reaching a resolution in this matter, despite numerous conferences.

After hearing argument, the Tax Court judge granted the motion. He signed an order under which Hoboken was barred from submitting any appraisals in defense of its assessment, from presenting any expert testimony at the time of trial, and from presenting any testimony at trial as to the Hoboken real estate market, the market values of any properties in Hoboken, or any comparable leases or sales. The order, as had the motion, made no reference to *R.* 4:23–5, applicable in the Tax Court through *R.* 8:6–1(a).

The matter still did not go to trial but was instead carried initially until June 1, 2000, and then further adjourned until June 21, 2000, when it finally got under way. At no point did the City present an expert's report or seek relief from the terms of the May 21, 2000 order. Twice during the proceedings, the Tax Court judge supplemented on the record his reasons for granting such relief against the municipality and, on June 29, 2000, he executed an order identical in effect to the order of May 21, 2000 but noting the supplemental reasons given.

The trial of the matter took three days; Hoboken was allowed to participate through cross-examination of Universal's expert, Mr. Stack. Neither side gave a closing argument. Testimony concluded on June 29, 2000; on August 21, 2000 the Tax Court

judge issued a twelve-page written decision setting forth his reasons for valuing the property at $2,339,088 in accordance with the opinion of Universal's expert.

On appeal, Hoboken presents two arguments: that the Tax Court judge erred because he did not follow the procedures set forth in *R.* 4:23–5(a)(2) governing dismissals with prejudice for failure to answer interrogatories; and the failure of the judge to accord the proper weight to the presumption of correctness which attaches to a municipal assessment. We note that Hoboken did not raise either contention before the Tax Court. Thus, to prevail before us, Hoboken must demonstrate that the Tax Court judge committed plain error, that is, that his rulings were clearly capable of producing an unjust result. *R.* 2:10–2.

*R.* 4:23–5(a)(2), upon which Hoboken relies, is applicable to proceedings in the Tax Court. *R.* 8:6–1(a). We have, in other matters, insisted on strict compliance with the procedural requisites of *R.* 4:23–5(a)(2), recognizing the potential impact upon a litigant of a dismissal with prejudice for failure to meet discovery obligations. *Zimmerman v. United Services Auto. Ass'n,* 260 *N.J.Super.* 368, 376, 616 *A.*2d 957 (App.Div.1992) ("[T]he ... rule requires meticulous attention to its critical prescriptions, and particularly to those provisions which are intended to afford a measure of protection to the party who is faced with the ultimate litigation disaster of termination of his cause."). We have also insisted that the rule not be applied beyond its intended scope. *Colonial Specialty Foods, Inc. v. County of Cape May,* 317 *N.J.Super.* 207, 210, 721 *A.*2d 748 (App.Div.1999) ("One party cannot obtain a dismissal with prejudice under [*R.* 4:23–5(a)(2) ] unless an earlier dismissal without prejudice was entered under *R.* 4:23–5(a)(1)".). The purpose of the rule, with its two-tiered structure, is "to elicit answers rather than to punish the offender by the loss of his cause of action or defense." *Zimmerman, supra,* 260 *N.J.Super.* at 374, 616 *A.*2d 957.

When an order has been entered dismissing a party's complaint or suppressing its defenses with prejudice under *R.*

4:23–5(a)(2), a party may either appeal directly to this court, or first pursue two potential avenues of relief available in the trial court, including a motion for reconsideration under *R.* 4:49–2, and a motion for relief under *R.* 4:50. *Albarran v. Lukas,* 276 *N.J.Super.* 91, 94, 647 *A.*2d 476 (App.Div.1994). Here Hoboken chose to appeal to this court rather than first seeking modification from the Tax Court judge, apparently recognizing that its failure even at that point to have an expert's report or answers to interrogatories made a request to that judge futile.

Nevertheless, we decline to analyze this question within the framework of *R.* 4:23–5(a). The taxpayer did not move under *R.* 4:23–5(a) and the Tax Court did not rely upon it in granting the taxpayer's motion. The City, moreover, did not cite the rule when it argued in opposition to the taxpayer's motion. If we were to reverse the Tax Court's order because there was not complete compliance with the requisites of *R.* 4:23–5(a), we would, in our judgment, needlessly reward a litigant which has, for whatever reason, consistently ignored the most basic of its obligations to the court and its adversary. We are cognizant, as was the Tax Court judge, that we are dealing with a public entity and that the consequences of the Tax Court judgments will be visited upon the taxpayers of Hoboken. In our judgment, the Tax Court judge afforded the City every opportunity to comply with its discovery obligations. Universal filed its first appeal in 1994; it did not proceed to trial until 2000. Although a court should have due regard for the potential impact of its decisions upon a municipality and its citizens, a public entity cannot be allowed to act with impunity simply because it is a public entity. It is no less obligated to comply with deadlines and rules than any other litigant.

We express no views whether Hoboken can seek recompense from the party whose conduct led to this order. We are fully satisfied, however, that it may not seek to burden and delay the claim of a taxpayer that Hoboken unfairly assessed its property by withholding the most basic discovery. That taxpayer, who was

compelled to pay the assessed tax in order to litigate, *N.J.S.A.* 54:3–27, was entitled to have its claims heard in a fair and expeditious manner.

■ Further, we are satisfied that the underlying purpose of the two-tier structure of *R.* 4:23–5(a)(1) and (2) was met in this instance. Hoboken was afforded more than the ninety days provided in the rules between a dismissal without prejudice under (1) and a dismissal with prejudice under (2), but to no avail. Hoboken made no showing to the Tax Court judge, nor to this court, that there was good cause for its failure to provide discovery in this time period, let alone the presence of extraordinary circumstances, which must be demonstrated to prevent a dismissal with prejudice under *R.* 4:23–5(a)(2) if more than ninety days have passed after a dismissal under *R.* 4:23–5(a)(1) without the discovery having been provided. *Rodriguez v. Luciano,* 277 *N.J.Super.* 109, 649 *A.*2d 87 (App.Div.1994).

■ A court has inherent authority to enforce its orders. The rules governing practice in the Tax Court call for the setting of deadlines for the production of appraisals by the parties' experts. *R.* 8:6–1(a)(5). Our court rules, in addition, explicitly recognize a court's authority to bar the testimony of an expert if a litigant has not duly supplied a report of that expert. *R.* 4:23–5(b). We have, in past matters, recognized the authority of a Tax Court judge to bar a municipality's expert from testifying for failure to supply a report. *Russo v. Borough of Carlstadt,* 17 *N.J. Tax* 519, 522 (App.Div.1998). Whether viewed as an exercise of the court's inherent authority, or as authorized under *R.* 4:23–5(b) (applicable in the Tax Court through *R.* 8:6–1(a)), the Tax Court, in our judgment, was fully justified. We are convinced that if we were to reverse the order of the Tax Court judge, we would undermine his inherent authority to control and manage the cases for which he is responsible. We decline to do so.

Finally, we have reviewed the transcript of the trial in this matter. We note that counsel for Hoboken extensively cross-examined Universal's expert, seeking to challenge the validity of

his valuation. Indeed, Hoboken's expert was present during the proceedings to consult with and assist the City's attorney. The Tax Court judge went so far as to permit the City to utilize the interrogatories Universal had answered to challenge the credibility of Universal's expert. We cannot consider either the procedure employed at the trial or the resultant judgements unjust.

We turn now to Hoboken's second argument, that the Tax Court judge failed to accord its assessment the proper presumption of validity. The law presumes that a property tax assessment is correct.

> On appeal a municipality's original tax assessment is entitled to a presumption of validity. The presumption attaches to the *quantum* of the tax assessment. Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has been long settled. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption."
>
> [*Pantasote v. City of Passaic*, 100 N.J. 408, 412–13, 495 A.2d 1308 (1985) (citations omitted).]

After the conclusion of this trial, the Tax Court judge issued a twelve-page letter opinion setting forth his analysis of the evidence that had been presented and the reasons for the conclusion on valuation that he reached. While the Tax Court judge may not have used the specific phrase "presumption of validity" within that letter opinion, we think, read fairly and as a whole, it is apparent the Tax Court judge was fully aware of the underlying principle and was satisfied that the evidence presented by Universal was sufficient to rebut that principle. In the past, we have refused to overturn a Tax Court judgment for failure to include that specific language. *Brae Associates v. Park Ridge Borough*, 19 *N.J. Tax* 306, 312–13 (App.Div.), *certif. denied*, 170 *N.J.* 87, 784 A.2d 719 (2001). We see no reason to depart from that approach here.

We have consistently recognized the "special expertise" of Tax Court judges. *Mori, supra*, 17 *N.J. Tax* at 98. We deem the

finding on valuation made here to be grounded in the record and we thus affirm it.

Affirmed.