**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4590-19

SPECIALIZED LOAN
SERVICING, LLC,

     Plaintiff-Respondent,

v.

TODD A. HENDERSON,
KATHERINE HENDERSON,
husband and wife, ACCURATE
DENTAL GROUP, BANK OF
AMERICA, N.A., JP MORGAN
CHASE BANK, N.A., TD BANK,
N.A., ST. CLARES HOSPITAL,
and STATE OF NEW JERSEY,

     Defendants,

and

GEMINI SOLUTIONS, LLC,

     Defendant-Appellant.

_____

Submitted April 12, 2021 – Decided August 24, 2021

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-035067-13.

Norgaard, O'Boyle & Hannon, attorneys for appellant (Cassandra Norgaard, on the briefs).

Epstein Ostrove, LLC, attorneys for respondent (Elliot D. Ostrove, of counsel; Vahbiz P. Karanjia, on the brief).

PER CURIAM

Defendant Gemini Solutions LLC (Gemini) appeals from several orders culminating in an August 3, 2020 final judgment, asserting the trial court erred by granting plaintiff's Specialized Loan Servicing, LLC's (SLS) motion to dismiss its answer with prejudice for failure to comply with discovery obligations and denying its application to reinstate its answer in contravention of Rule 4:23-5. We agree and reverse.

I.

Rule 4:23-5 provides procedural safeguards for the dismissal of pleadings for failure to comply with discovery obligations. The well-settled purpose of the rule is to elicit outstanding discovery "rather than to punish the offender by the loss of his cause of action . . . ." Zimmerman v. United Servs. Auto. Ass'n, 260 N.J. Super. 368, 374 (App. Div. 1992). To that end, to succeed on a motion to dismiss with prejudice under Rule 4:23-5 for failure to provide discovery, the

aggrieved party must strictly comply with the requirements of the rule, id. at 373, which "involves a two-step process." Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 93 (App. Div. 2008).

"First, the aggrieved party may move for dismissal for non-compliance with discovery obligations" under paragraph (a)(1) of the rule, and if the motion is granted, the pleadings of the delinquent party will be suppressed or "dismissed without prejudice." Ibid. The rule mandates dismissal or suppression without prejudice "[u]nless good cause for other relief is shown . . . ." R. 4:23-5(a)(1). "The motion shall be supported by an affidavit reciting the facts of the delinquent party's default and stating that the moving party is not in default in any discovery obligations owed to the delinquent party." R. 4:23-5(a)(1). Rule 4:23-5(a)(1) dismissals expressly apply to non-compliance with discovery obligations pursuant to Rule 4:17, pertaining to interrogatories, Rule 4:18, pertaining to demands for documents, and Rule 4:19, pertaining to demands for medical examinations.

"Upon being served with the order of dismissal or suppression without prejudice, counsel for the delinquent party shall forthwith" notify the client, "explaining the consequences of failure to comply with the discovery obligation and to file and serve a timely motion to restore." R. 4:23-5(a)(1). Thereafter,

3

[t]he delinquent party may move on notice for vacation of the dismissal or suppression order at any time before the entry of an order of dismissal or suppression with prejudice. The motion shall be supported by affidavit reciting that the discovery asserted to have been withheld has been fully and responsively provided and shall be accompanied by payment of a $100 restoration fee to the Clerk of the Superior Court, made payable to the "Treasurer, State of New Jersey," if the motion to vacate is made within [thirty] days after entry of the order of dismissal or suppression, or a $300 restoration fee if the motion is made thereafter. If, however, the motion is not made within [ninety] days after entry of the order of dismissal or suppression, the court may also order the delinquent party to pay sanctions or attorney's fees and costs, or both, as a condition of restoration.

[R. 4:23-5(a)(1).]

Next,

[i]f an order of dismissal or suppression without prejudice has been entered pursuant to paragraph (a)(1) of this rule and not thereafter vacated, the party entitled to the discovery may, after the expiration of [sixty] days from the date of the order, move on notice for an order of dismissal or suppression with prejudice. The attorney for the delinquent party shall, not later than [seven] days prior to the return date of the motion, file and serve an affidavit reciting that the client was previously served as required by subparagraph (a)(1) and has been served with an additional notification . . . of the pendency of the motion to dismiss or suppress with prejudice. . . . Appearance on the return date of the motion shall be mandatory for the attorney for the delinquent party . . . . The moving party need not appear but may be required to do so by the court. The

4

motion to dismiss or suppress with prejudice shall be granted unless a motion to vacate the previously entered order of dismissal or suppression without prejudice has been filed by the delinquent party and either the demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated.

[R. 4:23-5(a)(2).]

Further,

[i]f the attorney for the delinquent party fails to timely serve the client with the original order of dismissal or suppression without prejudice, fails to file and serve the affidavit and the notifications required by this rule, or fails to appear on the return date of the motion to dismiss or suppress with prejudice, the court shall, unless exceptional circumstances are demonstrated, proceed by order to show cause or take such other appropriate action as may be necessary to obtain compliance with the requirements of this rule. If the court is required to take action to ensure compliance or the motion for dismissal or suppression with prejudice is denied because of extraordinary circumstances, the court may order sanctions or attorney's fees and costs, or both.

[R. 4:23-5(a)(3).]

With these general principles in mind, we recite an abbreviated summary of this matter's factual background and procedural history. Although the record is extensive, we need not detail it at length in order to address the salient issues.

5

The underlying dispute involved the foreclosure of a non-purchase money mortgage for $295,000 held by PNC Bank, N.A. (PNC), later substituted as plaintiff SLS,[1] which was secured by real property owned by Todd and Katherine Henderson, a married couple. On October 2, 2013, PNC filed a two-count complaint against the Hendersons[2] to foreclose on the mortgage, which had been in default since March 1, 2009. On June 18, 2015, PNC filed an amended complaint identifying for the first time four "[i]ntervening [m]ortgages" the Hendersons had executed and secured with the property, including a $250,000 mortgage executed by the Hendersons on September 19, 2003, to National City Bank, and recorded on October 21, 2003. The mortgage was subsequently assigned to Gemini on May 11, 2013, which assignment was recorded on July 16, 2013.

---

[1] There is an extensive history leading to the substitution of SLS as plaintiff. On May 18, 2017, the mortgage in question was assigned from PNC, successor in interest to National City Mortgage Inc., to Nationstar Mortgage LLC (Nationstar), and recorded on September 11, 2017. Thereafter, on January 30, 2018, the mortgage was assigned from Nationstar to SLS, and recorded on January 31, 2018. By court order entered on June 29, 2018, "the [c]omplaint and all subsequent pleadings" were "amended to replace [PNC] with [SLS]."

[2] The complaint also named as defendants Bank of America, NA; J.P. Morgan Chase Bank, NA; TD Bank, NA; Accurate Dental Group; St. Clares Hospital; and the State of New Jersey.

A-4590-19

In the amended complaint, PNC named Gemini for the first time as a defendant and added a third count seeking priority over Gemini's mortgage through equitable subrogation. The complaint alleged that because the mortgage held by PNC's "assignor or predecessor," executed by the Hendersons on April 25, 2003, but recorded on October 27, 2004, was "utilized to satisfy the [f]irst [m]ortgage" recorded on April 30, 2002, PNC was "equitably subrogated to the lien position of the [f]irst [m]ortgage" and "[t]he [i]ntervening [m]ortgages have been unjustly enriched to the extent that they have acquired a first lien position."[3]

On October 16, 2015, Gemini filed a contesting answer to the amended complaint, challenging the priority of PNC's mortgage. When Gemini failed to respond to PNC's initial interrogatories and requests for production of documents due May 17, 2016, PNC advised Gemini by letters dated May 18 and May 26, 2016, that its continued non-compliance would result in an appropriate motion.[4] On July 15, 2016, when PNC eventually moved to strike Gemini's

_____

[3] The other three intervening mortgages are not involved in this appeal.

[4] At the time, PNC was not in default in any of its discovery obligations because Gemini had not served any discovery requests.

A-4590-19

answer for failure to respond to discovery requests, Gemini e-mailed uncertified responses to PNC's requests, prompting PNC to withdraw its motion.[5]

In addition to the motion to strike, in two separate motions, PNC moved for summary judgment on all three counts in the amended complaint. As to count three, PNC specifically sought a determination that its lien had priority over the Gemini mortgage. While not expressly opposing PNC's motion in relation to count three, Gemini cross-moved for summary judgment on count three, seeking adjudication of the priority dispute. Thus, three separate summary judgment motions were submitted to the trial court, two filed by PNC and one filed by Gemini.

On February 28, 2017, the court entered separate orders essentially granting summary judgement to PNC on count three but denying summary judgment to PNC on counts one and two. Regarding count three, the court concluded that PNC's mortgage "ha[d] priority over [Gemini's] . . . ." In a statement of reasons accompanying the February 28 orders, although the court

---

[5] Gemini's belated response, which was received on July 27, 2016, four days before the July 31, 2016 discovery end date, included two expert reports. As a result, PNC obtained an adjournment of the September 14, 2016 trial date to allow sufficient time to review the discovery and schedule any necessary depositions.

A-4590-19

rejected PNC's "argument under the equitable subrogation doctrine," the court determined that because PNC's mortgage "effectively replaced the [f]irst [m]ortgage," PNC's mortgage "retain[ed] the same priority as the [f]irst [m]ortgage."[6] Regarding counts one and two, the court concluded that plaintiff "fail[ed] to demonstrate ownership or control of the underlying debt" because plaintiff failed to "produce[] a copy of the [n]ote with any of its motions."

On March 7, 2017, PNC moved for reconsideration of the February 28 order denying summary judgment on counts one and two. Following oral argument, the court reversed its prior decisions. In an August 23, 2017 memorializing order, the court vacated the February 28, 2017 orders, granted summary judgment to PNC on counts one and two, and granted summary judgment to Gemini on count three.[7] Notably, as to count three, the court reiterated its rejection of the equitable subrogation doctrine but determined that PNC failed to raise in the pleading the modification and replacement principles

---

[6] The court noted that Gemini filed no opposition to PNC's motion for summary judgment on count three and, while its answer provided affirmative defenses to the third count, the answer failed to include specific facts to support the defenses as required under Rule 4:5-3 and 4:5-4. The court did not expressly address Gemini's cross-motion for summary judgment on count three.

[7] The August 23, 2017 order indicated that the court's reasons were "set forth on the record . . . in the telephonic presence of counsel." However, no transcript of the hearing was provided in the record.

relied upon by the court in its prior decision. Thus, Gemini was not fairly apprised of PNC's legal theory.

On September 12, 2017, PNC again moved for reconsideration, which was denied on January 16, 2018. In the statement of reasons accompanying the order, the court noted that PNC failed to "utilize[] the proper mechanics to amend its pleadings to fairly apprise Gemini" of its legal theory. Thereafter, PNC moved to amend its complaint to resolve the outstanding priority dispute between its mortgage and Gemini's, which motion was granted in an order entered on June 29, 2018. As a result, on July 11, 2018, SLS, now substituted for PNC, filed its second amended complaint specifically asserting the legal theory of "[r]eplacement and [m]odification" and "[c]ircular [p]riority" against Gemini, and seeking priority over Gemini's mortgage. Represented by new counsel, Gemini filed a contesting answer to plaintiff's second amended complaint on August 27, 2018.

On September 6, 2018, plaintiff served Gemini with a second set of interrogatories and requests for production of documents. When Gemini failed to respond, plaintiff sent a non-compliance letter and demand for responses on November 1 and 7, 2018. Both letters complied with Rule 1:6-2(c), requiring notification to the non-compliant party "that continued non-compliance with a

10

discovery obligation will result in an appropriate motion being made without further attempt to resolve the matter." When Gemini still failed to respond, on November 14, 2018, plaintiff filed an unopposed motion to strike Gemini's answer for failure to comply with discovery obligations pursuant to Rule 4:23-5.

On December 5, 2018, the court granted plaintiff's motion, ordering Gemini's answer "stricken in its entirety, without prejudice," pursuant to Rule 4:23-5(a)(1), and awarding plaintiff counsel fees incurred in filing the motion upon submission of "a [c]ertification of [s]ervices." On December 10, 2018, plaintiff filed a certification of services seeking a total of $1135.95 for attorneys' fees and costs incurred in filing the motion.

On January 9, 2019, Gemini filed a substitution of attorney and moved to vacate the dismissal and reinstate its answer. The moving papers also objected to paying plaintiff's counsel fees. In a supporting certification, Cathy Gray, a member of Gemini, averred that Gemini's "previous counsel never informed [Gemini] that [a motion to strike its answer] had been filed." It was only after Gemini retained new counsel "on December 6, 2018," that Gemini became aware "that an [o]rder had been entered on December 5, 2018 striking [Gemini's] answer."

A-4590-19

Gray certified further that "[i]t was never conveyed to [Gemini] or to its members that there was a looming deadline for the discovery, or that the answer would be stricken if discovery was not produced." However, immediately after retaining new counsel, Gemini "was informed about the [o]rder [s]triking the [a]nswer, . . . informed to begin gathering the documents and other information to comply with the discovery request," and submitted all the requested discovery to plaintiff. Gemini's new counsel confirmed in a supporting certification that on January 9, 2019, "all requested outstanding discovery" was "delivered" to plaintiff.

Without addressing Gemini's pending motion to vacate the dismissal and reinstate its answer, on January 15, 2019, the court awarded plaintiff counsel fees and costs in the amount of $675.95 in connection with its motion to strike. Shortly thereafter, on January 17, 2019, plaintiff filed opposition to Gemini's motion. While admitting that Gemini had provided the requested discovery, plaintiff opposed Gemini's motion citing Gemini's failure to submit any proof that it paid the $300 reinstatement fee required under Rule 4:23-5, as well as Gemini's longstanding history of "discovery failures."

On February 4, 2019, Gemini responded to plaintiff's opposition with a certification by its counsel averring that a check for $300 was sent "to the Clerk

of the Superior Court, payable to the 'Treasurer, State of New Jersey' pursuant to [Rule] 4:23-5 for the reinstatement fee." However, "[b]ecause the motion was filed on [eCourts], it was not sent with the motion, but separately." No exhibits were attached to the attorney certification.

On February 8, 2019, the court issued an order denying Gemini's motion to reinstate its answer. In the accompanying statement of reasons, the court cited the absence of competent proof that Gemini provided the requested discovery as well as Gemini's failure to pay the restoration fee. The court explained:

> [A]lthough [Gemini has] provided the certification of Cathy Cray in support of [its] motion, [it] did not submit any additional proofs that the withheld discovery has been fully and responsively provided . . . . [P]ursuant to [Rule 4:23-5(a)(1) Gemini was] required to pay a restoration fee to the Clerk of the Superior Court since the [m]otion to [v]acate was filed [thirty-four] days after the entry of the order of dismissal. [Gemini has] failed to pay the restoration fee and ha[s] not provided any proof as to compliance with discover[y].

On February 27, 2019, Gemini moved for reconsideration, asserting: (1) the reinstatement fee of $300 was paid to the Clerk of the Superior Court; (2) discovery was fully transmitted to SLS on January 8, 2019, as admitted by SLS in its opposition brief; and (3) the attorneys' fees in the amount of $675.95 were

13

paid to SLS on February 27, 2019.[8]  Although not included in the record, attached to the moving papers was an exhibit proving delivery of the reinstatement fee.  Plaintiff opposed the motion, arguing Gemini's motion for reconsideration seeks "another proverbial bite at the apple."

On June 6, 2019, the court denied Gemini's motion for reconsideration. In the accompanying statement of reasons, the court stated:

> [Gemini] has not provided proof of payment of the [$300] restoration fee.  There is no proof in Morris County Finance Department, the Office of Foreclosure nor the Banking and Cash Management Unit. Furthermore, [Gemini's] collateral account with the Office of Foreclosure does not reflect a [$300] deduction.  There is also no record of a separate check having been received.

On June 17, 2019, Gemini filed another motion to reinstate, reiterating that on January 9, 2019, all requested discovery was delivered to plaintiff, and highlighting the difficulties it had faced in attempting to pay the restoration fee, dating back to its first attempt on January 22, 2019.  Specifically addressing the difficulty paying the restoration fee, in a supporting certification, Gemini's counsel averred:

---

[8]  On February 20, 2019, plaintiff's counsel had advised the court that it had not yet received the payment of attorneys' fees from Gemini, which was due on February 14, 2019.

[1]. Because [Rule] 4:23-5 predates [eCourts], the Rule contemplated payment of the fee with the motion, by attaching a check to the motion. This is impossible with [eCourts] unless a check is either mailed directly to the [c]ourt or paid through a collateral account.

[2]. Before [Gemini's] motion to vacate the dismissal order was filed on January 22, 2019, I contacted the Clerk to determine how the payment was to be made. I was advised that my firm's collateral account would be charged upon filing. It was not.

[3]. In an attempt to comply with the Rule, my office sent a check directly to the Clerk of the Superior Court, payable to the Treasurer, State of New Jersey. It now appears that this check was returned to our office and never applied to the motion.

[4]. My office has been in communication with the Clerk's office, and because the motion was not titled "Motion to Reinstate Case," the charge was not made to the collateral account for the fee when the original motion was filed. The cure suggested was to refile the motion with the title as it appears earlier in this paragraph; the Clerk also advised that the fee would be charged manually. . . .

[5]. Because the fee will not be charged to the collateral account until th[e] motion is actually filed, I cannot certify to the payment until after filing; however, once the payment is made I will file a supplemental certification to ensure compliance with the Rule.

On July 18, 2019, Gemini's counsel submitted a supplemental certification

stating:

15

[1]. Following the filing of the motion to reinstate . . . , our office followed up with the Superior Court Clerk regarding the reinstatement fee, to advise that the fee had not been charged, and to request same be charged.

[2]. The Superior Court Clerk advised that the restoration charges "are not imposed until and unless the order is entered reinstating the case."

[3]. Our office already attempted to mail a check, which was returned, and we were advised that firms with a collateral account had to use the collateral account, rather than sending checks.

[4]. I personally emailed the Superior Court Clerk numerous times to advise of the issue and to seek guidance as to how to pay the restoration fee. I was ultimately transferred to a supervisor, who I spoke with over the phone.

[5]. The supervisor informed me that she would manually charge the collateral accounts as a "miscellaneous" charge for the restoration fee. I have attached the collateral account statement . . . as evidence that the fee has, in fact, been paid in the amount required by the Rule . . . .[9]

That same day, July 18, 2019, plaintiff cross-moved to strike Gemini's answer with prejudice, asserting that Gemini "ha[d] not filed a [s]upplemental [c]ertification certifying that it ha[d] paid the [$300 r]einstatement [f]ee."

---

[9] We confirmed with the Superior Court Clerk that restoration fees are not charged until the order is entered reinstating the case and that the $300 restoration fee was debited from Gemini's counsel's collateral account on June 17, 2019.

A-4590-19

Gemini opposed the cross-motion, certifying that it was only after sending "no less than ten emails to the Clerk's office attempting to . . . get the fee paid" that a "manager ultimately . . . manually charge[d] the restoration fee as . . . documented . . . in [counsel's] supplemental certification."

On January 13, 2020, the court denied Gemini's motion to reinstate with prejudice, and granted plaintiff's cross-motion to strike Gemini's answer with prejudice. In the accompanying statement of reasons, while acknowledging Gemini's arguments regarding its "good faith effort to pay the restoration fee," the court stated "it is evident [that] Gemini did not comply with the provisions of [Rule] 4:23-5(a)(1)." The court further noted that even if Gemini had complied with the provisions of Rule 4:23-5(a)(1), its motion to reinstate would still be "untimely and improper" because Gemini's answer was already stricken by the court in its December 5, 2018 order, and Gemini's motion to reinstate and for reconsideration were denied on February 8 and June 6, 2019, respectively.

Thereafter, on March 27, 2020, plaintiff moved for final judgment over Gemini's objection. On August 3, 2020, the motion was granted, and final judgment was entered. This appeal followed.

On appeal, Gemini raises the following points for our consideration:

POINT I: THE TRIAL COURT ERRED IN FAILING TO VACATE THE DEFAULT ON FEBRUARY 8, 2019 PURSUANT TO [RULE] 4:23-5.

POINT II: THE COURT'S FAILURE TO RECONSIDER THE MOTION TO VACATE DEFAULT AND REINSTATE GEMINI'S ANSWER CONSTITUTES AN ABUSE OF DISCRETION.

POINT III: THE COURT'S ENTRY OF THE ORDER DISMISSING GEMINI'S ANSWER WITH PREJUDICE AFTER ADDITIONAL EVIDENCE OF COMPLIANCE OF [RULE] 4:23-5 WAS PROVIDED CONSTITUTES AN ABUSE OF DISCRETION.

POINT IV: THE TRIAL COURT'S CONSIDERATION OF ALLEGED "DELAY" ON THE PART OF GEMINI IN SEEKING REINSTATEMENT WAS IMPROPER AND AN ABUSE OF DISCRETION.

POINT V: GEMINI WAS DEPRIVED OF DUE PROCESS THROUGH THE COURT'S ERRONEOUS DENIAL OF REINSTATEMENT.

II.

"[T]he standard of review for dismissal of a complaint with prejudice for discovery misconduct is whether the trial court abused its discretion, a standard that cautions appellate courts not to interfere unless an injustice appears to have been done." Abtrax Pharm. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995). Here, we are constrained to reverse because, under the circumstances, it was a mistaken exercise of discretion to deny Gemini's motion to reinstate with

18

prejudice and to grant plaintiff's cross-motion to strike Gemini's answer with prejudice.

We acknowledge that we have "adhere[d] to the principle that a [party] is not 'automatically entitled' to relief merely because there has been some failure to comply with all the procedural requirements of the rule." A&M Farm & Garden Ctr. v. Am. Sprinkler Mech. L.L.C., 423 N.J. Super. 528, 536 (App. Div. 2012). Nonetheless, "[i]n [Zimmerman], we noted that 'achievement of the salutary scheme of [Rule 4:23-5] requires meticulous attention to its critical prescriptions, and particularly to those provisions which are intended to afford a measure of protection to the party who is faced with the ultimate litigation disaster of termination of his cause.'" A&M Farm & Garden Ctr., 423 N.J. Super. at 535 (quoting Zimmerman, 260 N.J. Super. at 376-77). Indeed, Rule 4:23-5 "specif[ies] that a dismissal with prejudice shall occur if certain conditions are satisfied. . . ." Cooper v. Consol. Rail Corp., 391 N.J. Super. 17, 25 (App. Div. 2007). Here, because the Rule's requirements were not satisfied, we are convinced that the court's decision resulted in an injustice to Gemini.

First, under the Rule, the "delinquent party" may move to vacate the dismissal or suppression without prejudice order "at any time before the entry of an order of dismissal or suppression with prejudice." R. 4:23-5(a)(1). Thus,

we have "interpret[ed] Rule 4:23-5(a)(1) as imposing no time constraints for seeking reinstatement[.]" Sullivan, 403 N.J. Super. at 96. Therefore, contrary to the court's finding in its statement of reasons accompanying the January 13, 2020 order, Gemini's motion to reinstate was not "untimely" because it was filed before plaintiff cross-moved to strike Gemini's answer with prejudice and before an order was entered striking Gemini's answer with prejudice.

Second, under the Rule, the motion to dismiss or suppress with prejudice "shall be granted unless a motion to vacate the previously entered order of dismissal or suppression without prejudice has been filed by the delinquent party and either the demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated." R. 4:23-5(a)(2). Here, when plaintiff cross-moved to suppress Gemini's answer with prejudice, it is undisputed that Gemini's motion to vacate the previously entered suppression order was pending and the requested discovery had been previously provided on January 8, 2019. Therefore, the prerequisites for granting plaintiff's motion were not met.

Notwithstanding Gemini's counsel's certification, in denying Gemini's motion to reinstate its answer, the court relied in part on the non-payment of the restoration fee with the filing of the motion. However, as asserted by Gemini's

counsel, because <u>Rule</u> 4:23-5 predates eCourts, the payment of the requisite restoration fee contemplated by the Rule is not synchronized.

By December 14, 2017, the Judiciary implemented a mandatory electronic eCourts filing system (eCourts) in the Superior Court, Law Division, in all vicinages. <u>See</u> <u>Notice to the Bar</u>, <u>eCourts Civil — Mandatory Electronic Filing</u>, Judge Glenn A. Grant, June 6, 2017 (223 N.J.L.J. 1809 (2017)). A May 17, 2017 notice to the Bar advised attorneys that they "must have a Judiciary Account Charge System (JACS) account to electronically file documents that require a fee." <u>See</u> <u>Notice to the Bar</u>, <u>Expansion of eCourts to Civil</u>, Judge Glenn A. Grant, May 17, 2017 (223 N.J.L.J. 1558 (2017)). As a result, if an electronic filing was fee-related, an attorney could only make payment through his or her JACS account. Even assuming attorneys could still pay by check made payable to the Treasurer, State of New Jersey, that method of payment was eliminated on December 14, 2017, when eCourts was fully implemented in all vicinages. <u>See</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 7.4 on <u>R.</u> 4:21A-6 (2021).

Thus, we are satisfied that Gemini's difficulty paying the restoration fee simultaneously with the filing of its motion was a result of a mismatch between the Rule's requirements and the newly implemented electronic eCourts filing

system, rather than a lack of diligence on the part of Gemini in satisfying that particular requirement of the Rule. While we understand the court's frustration, "it must be remembered that the main purpose of Rule 4:23-5 is to compel discovery, not to dismiss pleadings." Clark v. Pomponio, 397 N.J. Super. 630, 645 (App. Div. 2008). "[I]t is a tenet of our jurisdiction that resolution of disputes on the merits are to be encouraged rather than resolution by default for failure to comply with procedural requirements." St. James AME Dev. Corp. v. City of Jersey City, 403 N.J. Super. 480, 484 (App. Div. 2008). "Rule 4:23-5 advances this goal, while affording an aggrieved party a remedy to compel production of the outstanding discovery and the right to seek final resolution through a dismissal process." Ibid.

Gemini's answer was stricken without prejudice on December 5, 2018, for failure to respond to discovery requests. Gemini provided the requested discovery on January 8, 2019. The court denied Gemini's motion to reinstate on February 8, 2019, its motion for reconsideration on June 6, 2019, and its second motion to reinstate on January 13, 2020, when it granted plaintiff's motion to strike with prejudice. Inasmuch as the requested discovery had been produced over a year prior to the adjudication of the January 13 motion, and there was unequivocal evidence of payment of the restoration fee by June 17, 2019, a

dismissal with prejudice under Rule 4:23-5 was not justified under these circumstances. See Cooper, 391 N.J. Super. at 22-23 (affirming a dismissal with prejudice where the plaintiff did not provide the requested discovery between the order of dismissal without prejudice and the time of hearing the motion to dismiss with prejudice and there was no finding of "exceptional circumstances"); St. James, 403 N.J. Super. at 485 (noting "that a plaintiff's motion to reinstate when counsel had provided fully responsive discovery just four days prior to the hearing date on the motion to dismiss with prejudice should be granted").

The court's denial of Gemini's motion to reinstate when it had satisfied the requirements of the Rule, and grant of plaintiff's motion to dismiss with prejudice when the prerequisites for dismissal had not been met constituted a clear error of judgment. Accordingly, we reverse the January 13, 2020 order denying Gemini's motion to reinstate and granting plaintiff's cross-motion to strike Gemini's answer with prejudice, and we vacate the August 3, 2020 final judgment. Based on our decision, we need not address Gemini's remaining arguments.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-4590-19