**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3777-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JERMAINE BRYANT, a/k/a
TWIN "COUNTRY,"

     Defendant-Appellant.

_____

Submitted April 8, 2024 – Decided April 23, 2024

Before Judges Sabatino and Vinci.

On Appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 93-03-1078.

Jennifer Nicole Selitti, Public Defender, attorney for appellant (Austin J. Howard, Assistant Deputy Public Defender, of counsel and on the briefs).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Braden Bendon Couch, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jermaine L. Bryant appeals from the Law Division's March 26, 2021 order denying his motion for ballistics testing. We affirm.

We discern the following facts from the record. Defendant, after waiver of jurisdiction by the Family Part, was found guilty of murder, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(1); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). He was sentenced to a term of life imprisonment with a thirty-five-year period of parole ineligibility. His conviction was affirmed on direct appeal. State v. Bryant, 288 N.J. Super. 27 (App. Div. 1996), certif. denied, 144 N.J. 589 (1996).

We adopt the factual recitation set forth in our opinion on defendant's direct appeal.

> The facts were hotly contested at trial. On November 11, 1992, Michael and Mitchell Saunders visited their uncle, Charles, at his Newark apartment. In the course of their conversation, Charles, who was superintendent of the apartment building, mentioned that he had been having problems with defendant. Defendant, who was then sixteen years old, resided in the building with his mother, Mary Manigo.
>
> Following their visit, the Saunders brothers confronted defendant, who was standing in the front of the building. Defendant responded that he had no difficulty

with Charles. He then left the two men, entered his apartment, and returned with his mother, who stopped a passing police car. The police officer told Charles to direct his nephews to leave. Believing that the argument had been defused, the officer then departed.

Shortly after the police officer left the scene, a fistfight erupted between Clarence Roundtree, a friend of defendant, and the Saunders brothers. It was undisputed that the fight ended quickly and inconclusively.

During the altercation, defendant entered his apartment and emerged with a rifle. From the landing in front of the apartment building, defendant fired at least one shot in the air, at which point the gun jammed. While defendant attempted to engage the trigger mechanism, Roundtree took the rifle from him and pointed it at the Saunders brothers. Roundtree unsuccessfully attempted to fire the weapon. Defendant then grabbed the rifle from Roundtree's hands and fired at least one more shot in the air.

The State's witnesses gave sharply differing accounts concerning what happened next. Michael Saunders testified that he and his brother ran to their car and attempted to enter it. While running to the car, Mitchell reached his hands into his pants pockets to remove his car keys. As Mitchell was opening the driver's door, defendant shot him in the chest. The bullet pierced his heart and aorta and caused his chest cavity to fill with blood, ultimately killing him. Upon seeing his brother fall, Michael ran around the car in an effort to reach his uncle's apartment. As Michael passed the car door, defendant shot him once in the shoulder, the bullet piercing his lung. Defendant then fled from the scene. The police were immediately summoned, and both victims were transported to the hospital. In a statement

3

given in the emergency room, Michael recounted that his brother had been running toward the defendant when he was shot and that the two had been involved in an ongoing dispute.

Diamond Burchett, who lived next door, largely corroborated Michael's account of the shooting, although he never saw Roundtree with the weapon. He did state, however, that when the gun jammed, one of the Saunders brothers remarked to defendant that he was not "shooting nothing but blanks." Burchett also testified that one of the Saunders brothers was moving toward defendant when he was shot.

Mary Manigo testified that after defendant had retrieved the gun, he fired several warning shots in the air. She claimed that, notwithstanding these shots, the victims continued to approach defendant while reaching into their pants pockets. In the witness's words, the Saunders brothers "kept walking like zombies[,] like they couldn't be touched" by bullets. According to Manigo, defendant shot Michael first in the shoulder, and then Roundtree grabbed the gun and killed Mitchell.

[Id. at 31-33.]

On September 15, 1997, defendant filed his first petition for post-conviction relief (PCR), which the trial court denied. We affirmed that denial. State v. Bryant, No. A-3571-99 (App. Div. Mar. 6, 2001). The Supreme Court denied defendant's petition for certification. 169 N.J. 607 (2001).

4

On October 6, 2005, and April 24, 2006, defendant filed his second and third PCR petitions, which the trial court denied by order of July 25, 2006. Defendant did not appeal from the denial of those petitions.

On August 8, 2006, defendant filed a fourth petition for PCR, which the trial court denied on October 13, 2006. Defendant moved for reconsideration, which was denied. In its decision denying reconsideration, the court noted defendant argued "that the State . . . engaged in prosecutorial misconduct by virtue of its alleged failure to provide a [b]allistic[s] [r]eport which purportedly states the crime was committed with a [.]22 caliber revolver" whereas "the State's case was premised on the possession of a rifle or a shotgun." We affirmed the denial of PCR. State v. Bryant, No. A-6274-05 (App. Div. Dec. 14, 2007). The Supreme Court denied defendant's petition for certification. 194 N.J. 272 (2008).

On January 11, 2007, defendant moved for a new juvenile waiver hearing, which the trial court also denied. Defendant again argued the ballistics report constituted new evidence that showed the "decedent's death was caused by a [.]22 caliber revolver." We affirmed the court's denial of defendant's motion. State v. Bryant, No. A-5129-06 (App. Div. Sept. 24, 2008). The Supreme Court denied defendant's petition for certification. 198 N.J. 312 (2009).

A-3777-21

On August 4, 2009, defendant filed a fifth petition for PCR. On March 3, 2010, the court denied defendant's petition as time-barred. The judge also concluded that "even if [defendant's] petition was not time-barred, the underlying issue of [his] petition could have been, and actually was raised in a prior proceeding." The court found defendant's "request for performance of ballistic[s] testing [was] subsumed under [defendant's] fourth . . . PCR petition, alleging 'newly discovered evidence' of a . . . ballistic[s] report which supposedly stated that [the] victim's death was caused by a .22 caliber revolver." The court also found "even if [defendant] had not raised this issue in a previous proceeding, the issue certainly could have been reasonably raised on direct appeal, or other prior proceedings, [because] the evidence . . . was obtained and available in 1993 and 1994 . . . ."

On appeal, defendant argued the court "erred when it dismissed [his] motion for performance of forensic and ballistic[s] testing . . . ." We affirmed the denial of PCR. State v. Bryant, No. A-3298-09 (App. Div. June 16, 2011). The Supreme Court denied defendant's petition for certification. 209 N.J. 98 (2012).

In 2013, defendant filed a motion to correct an illegal sentence, which was denied. We affirmed the court's denial of defendant's motion. State v. Usry,

6

No. A-2560-13 (App. Div. Mar. 22, 2016). The Supreme Court denied defendant's petition for certification. 226 N.J. 213 (2016).

In 2016, defendant filed a motion for a new trial arguing again that the State knowingly withheld discovery in 1993. On February 29, 2016, the court denied that motion. On June 29, 2016, defendant filed his sixth petition for PCR. On December 16, 2016, the court denied the petition for PCR.

On September 26, 2017, defendant filed a motion to correct an illegal sentence that is, in part, the subject of this appeal. In support of his motion, defendant argued, "[t]he [t]rial [c]ourt[']s prior ruling concludes that these issues should [have] been raised at trial[:] . . . [c]ounsel['s] failure to obtain the [m]edical report/[b]allistic[s] [r]eport prior to trial."

On November 8, 2019, the court entered an order denying defendant's motion. We vacated that order based on our Supreme Court's decision in State v. Comer, 249 N.J. 359 (2022), and remanded for resentencing. State v. Bryant, No. A-1547-19 (App. Div. Mar. 7, 2022).

On September 24, 2018, defendant filed a pro se motion to correct an illegal sentence based on an alleged Brady[1] violation that is also the subject of this appeal. He requested "[b]allistic[s] [t]esting . . . be conducted to establish

_____

[1] Brady v. Maryland, 373 U.S. 83 (1963).

the facts that lay [outside] of the court['] s records, that the 12[-]gauge shotgun/rifle [cannot] shoot [.]22[][c]aliber [b]ullets and [the State's ballistics expert] provide his findings to the [p]rosecutor . . . that the weapon in possession is not the murder weapon."

By order entered March 26, 2021, the court denied defendant's motion for ballistics testing supported by a written opinion. The court found defendant's request for ballistics testing was litigated previously and lacked merit. The court noted "[t]he record does not disclose the slightest hint that this case, in which witnesses testified that two shooters possessed the same weapon at different times, and in which [defendant's] own mother testified that both victims were shot with the same weapon but by different individuals, would have been materially altered by evidence relating to the caliber of the weapon used." This appeal followed.

Defendant presents the following arguments for our consideration:

> POINT I: THE PCR COURT ERRED IN DENYING DEFENDANT'S PCR PETITION WITHOUT AN EVIDENTIARY HEARING AND WITHOUT EVEN ADDRESSING HIS CLAIM THAT HIS TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE.
>
> > A. PCR Procedural Rules Do Not Bar Review Because Trial Counsel's Failure to Investigate

and Present Critical Evidence Constitutes a Fundamental Injustice

B. Defendant Was Entitled to an Evidentiary Hearing and PCR Counsel Because He Established a Prima Facie Case of Ineffective Assistance of His Trial Counsel and "Good Cause" for PCR Counsel.

1. Trial Counsel's Failure to Investigate the Alleged Murder Weapon and Other Third-Party-Guilt Evidence Was Objectively Unreasonable.

2. Trial Counsel's Failure to Use Existing Evidence to Challenge the State's Theory that Defendant Was the Sole Shooter Was Objectively Unreasonable.

3. Trial Counsel's Deficient Performance Prejudiced the Defense and Denied Defendant a Fair Trial.

Specifically, defendant contends, based solely on his assertion in his September 24, 2018 letter brief, the firearm he used on November 11, 1992, was a 12-gauge shotgun, and was not capable of firing the .22 caliber bullets that injured Michael and killed Mitchell. Based on that premise, defendant argues defense counsel was ineffective because counsel failed to establish through ballistics testing defendant's firearm was not capable of firing .22 caliber bullets

9

and should have pursued a defense based on third-party guilt instead of self-defense.[2]

We affirm the denial of defendant's motion for ballistics testing for the reasons set forth in the court's March 26, 2021 written opinion. We add the following comments.

We are not persuaded by defendant's contention that the court failed to address the arguments raised in his September 26, 2017, and September 24, 2018 motions as a petition for PCR. Except for the alleged failure to obtain a ballistics report, the ineffective assistance of counsel arguments defendant advances on appeal were not raised in his briefs and were not presented as a petition for PCR. Generally, issues raised for the first time on appeal need not be considered because they "never were subjected to the rigors of an adversary hearing, and . . . [their] legal propriety never was ruled on by the trial court . . . ." State v. Robinson, 200 N.J. 1, 18-19 (2009). We have nevertheless considered defendant's arguments and are not convinced.

---

[2] The firearm used was never recovered and, therefore, cannot be subjected to ballistics testing. The "ballistics testing" defendant requests is essentially an expert opinion that .22 caliber bullets cannot be fired from a 12-gauge shotgun.

We review the denial of PCR without an evidentiary hearing de novo. State v. Harris, 181 N.J. 391, 421 (2004).[3]

A defendant bears the burden of establishing a prima facie claim. State v. Gaitan, 209 N.J. 339, 350 (2012). A defendant must "do more than make bald assertions that he was denied the effective assistance of counsel" to establish a prima facie claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990). An evidentiary hearing is warranted only when "'a defendant has presented a prima facie [claim] in support of [PCR],'" meaning a "defendant must demonstrate a reasonable likelihood that his . . . claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158-59 (1997) (quoting State v. Preciose, 129 N.J. 451, 462-63 (1992)).

---

[3] To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome of the proceeding. Fritz, 105 N.J. at 58.

Rule 3:22-4(b)(1) provides, in relevant part, "[a] second or subsequent petition for [PCR] shall be dismissed unless . . . it is timely under R[ule] 3:22-12(a)(2) . . . ." Rule 3:22-12(a)(2) provides:

> Notwithstanding any other provision in this rule, no second or subsequent petition shall be filed more than one year after . . . the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence . . . .

Rule 1:3-4(c) provides "[n]either the parties nor the court may . . . enlarge the time specified by . . . R[ule] 3:22-12 . . . ." "The 'time limitations' in Rule 3:22-12 'hence are not subject to the relaxation provision of Rule 1:1-2.' Thus, enlargement of Rule 3:22-12's time limits 'is absolutely prohibited.'" State v. Jackson, 454 N.J. Super. 284, 292 (App. Div. 2018) (citation omitted) (citing Aujero v. Cirelli, 110 N.J. 566, 577 (1988)). In addition, "[a] petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal, R[ule] 3:22-4(a), or that has been previously litigated, R[ule] 3:22-5." State v. Nash, 212 N.J. 518, 546 (2013).

We have carefully reviewed defendant's arguments and conclude the issues were either raised or could have been raised in prior proceedings, and have been raised more than one year after the factual predicate for the relief

sought was discovered. Defendant's arguments, therefore, are precluded. R. 3:22-4, R. 3:22-5, and R. 3:22-12(a).

Even if defendant's claims were not precluded, we conclude they lack merit. Several trial witnesses testified defendant was in possession of a .22 caliber rifle and fired shots from that rifle. The witnesses also testified defendant and Roundtree used a single firearm to shoot Michael and kill Mitchell. In addition, the June 10, 1993 ballistics laboratory report established the victims were shot with .22 caliber bullets discharged from the same firearm, and the only spent shell casings recovered at the scene were .22 caliber. The firearm itself was never located. The only support for defendant's claim that the weapon he used was a 12-gauge shotgun is his own self-serving statement.

Defendant's claim of ineffective assistance of counsel fails both prongs of Strickland. Considering the evidence presented at trial, there was no basis for defense counsel to obtain a ballistics report relating to a 12-gauge shotgun because there was no evidence indicating defendant was in possession of or fired a firearm other than a .22 caliber rifle. Based on the same trial evidence, as the trial court determined, there is no reason to conclude such a report would have affected the outcome of the proceedings. Because defendant did not establish a prima facie case of ineffective assistance, the trial court did not abuse its

discretion by denying defendant's request for an evidentiary hearing or ballistics testing.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3777-21